8 U.S. 224
 4 Cranch 224
 2 L.Ed. 222
 GRANT
v.
NAYLOR.
 February Term, 1808
 
 ERROR to the circuit court for the district of Maryland, in an action of ussumpsit brought by John and Jeremiah Naylor against Daniel Grant.
 The verdict and judgment below were for the plaintiffs on the second count of the declaration, which stated in substance, that it was agreed between the plaintiffs and defendant, that if the plaintiffs would at the request of the defendant sell and deliver to a John Hackett and Alexander Grant 'divers goods, wares and merchandizes,' he, the defendant, in consideration of the same, promised to pay the plaintiff as much money as they reasonably deserved to have therefor, in case Hackett and Grant did not pay for them; and that, in consideration of the defendant's promise, and at his request, they sold and delivered to Hackett and Grant 'divers goods, wares and merchandizes,' and reasonably deserved to have therefor 2, 168l. sterling, of which the defendant and Hackett and Grant had notice; and which Hackett and Grant did not pay, but refused, and are insolvent; of all which the defendant had notice, and in consideration of the premises promised to pay the plaintiffs the said sum of 2,168l. sterling, of the value, &c. which he has failed to do.
 Upon the issue of non assumpsit, the plaintiffs read in evidence a letter, admitted to be signed by and with the name of the defendant, and directed 'To Messrs. John and Joseph Naylor and Company,' in the following words:
 'Baltimore, 6th April, 1795.
 'Gentlemen,
 'By the recommendation of Mr. Travis, I take the liberty to address you by my son Alexander, who visits England with a view of establishing connexions in the commercial line there in the different manufactories and others. He is concerned with Mr. John Hackett, of this place, under the firm of Hackett and Grant. For their plan I refer to themselves. Have therefore only to add, that I will guaranty their engagements, should you think it necessary, for any transaction they may have with your house.'
 The plaintiffs also produced and offered to read in evidence a commission (with interrogatories, and an exhibit and depositions) directed to two persons, in the usual form, commanding them to take the examination of the witnesses in writing upon the interrogatories, and to send them to the court closed up and under the seals of any two or one of them, and requiring them to take the oath annexed to the commission, but not directing before whom, or in what manner the oath should be taken.
 The depositions under this commission went to prove that there was no commercial house at Wakefield, (the town where the plaintiffs lived), under the name of John and Joseph Naylor and Company. That the firm of the plaintiffs was John and Jeremiah Naylor and Company, and that the Mr. Travis mentioned in the letter was the agent of the plaintiffs. That the letter was in fact intended for that house, and was delivered to it by Alexander Grant, of the house of Hackett and Grant, who obtained goods upon the credit of it, and who became insolvent.
 To that reading of this commission and depositions the defendant objected, contending that the commission was illegally and defectively executed; but the court below overruled the objection, and suffered them to be read.
 The defendant then prayed the court to instruct the jury, that upon this evidence the plaintiffs were not entitled to recover upon either count in the declaration; but the court refused, and instructed the jury that the evidence was proper and legal to support the issue on the part of the plaintiffs, and sufficient in law for that purpose, if by the jury believed to be true, and if they should believe that the letter was intended to be addressed, and was addressed, by the defendant to the plaintiffs.
 To which opinions of the court the defendant excepted, and brought his writ of error.
 Martin, for the plaintiff in error.
 1. The first bill of exceptions brings into view the informality of the execution of the commission to examine witnesses. The authority to issue such a commission, and the mode of executing it, depend upon the act of assembly of Maryland, passed at November session, 1773, c. 7. s. 7. by which it is enacted, 'that such commission shall issue, and the commissioners shall be appointed and qualified, and such interrogatories be proposed or exhibited, and such commission be executed and returned, and the depositions of affidavits taken in pursuance thereof, shall be published in the same manner and form, as in the case of a commission issuing out of the court of chancery for the examination of witnesses residing and living out of this province; and the depositions or affidavits which shall be duly made or taken in virtue of any commission which shall issue in pursuance of this act, or copies thereof duly attested, shall be admitted in evidence at the trial of the cause.'
 The mode of issuing and executing commissions from the court of chancery in Maryland has always been conformable to the English practice, except that, by the act of assembly of 1785, c. 72. s. 15. the parties are permitted to be present at the examination, and may put additional interrogatories.
 1st. We object to the execution of the commission, because it does not appear that the commissioners were sworn according to law. They themselves certify that they took the oath annexed to the commission, but do not say before whom, nor in what manuer. It ought to have been certified by some person who administered the oath, and who was competent in law to administer it; and such certificate ought to show how it was done. It is like the case of a commission to ascertain the boundaries of lands, in which case it has been uniformly holden in Maryland, that if the commissioners only return that they have acted according to law in general terms, their return is insufficient. They must certify in what manner they have executed their commission, that the court may judge whether it be legally executed.
 2d. The commissioners were only authorised to examine witnesses upon the interrogatories sent out with the commission. But it does not appear that any interrogatories were sent with the commission.*
 3d. The defendant had no notice of the time and place of executing the commission. He filed no interrogatories. Notice is required by the principles of natural justice, and by the constant practice of the court of chancery. 1 Harrison's Ch. Prac. 444.
 4th. The return of the commissioners ought to have been under seal.
 LIVINGSTON, J. Was not the envelope under their seals?
 Martin. Yes; but that is not sufficient; they ought to have put their seals to their certificate.
 LIVINGSTON, J. I have never seen any other seal to the return of commissions than the seal to the envelope.
 
 Martin
 
 5th. The commission was taken out upon the first issue which was made up, and before the second issue upon the amended pleadings,** upon which the cause was finally tried.
 LIVINGSTON, J. Did not the old declaration contain a count like the second count of the new, upon which the verdict found?
 
 
 1
 Martin. Upon filing a new declaration, it is to be considered as a new case altogether. Eq. Ca. Ab. 490. 2d vol. pt. 1. pl. 5. new edition.
 
 
 2
 2. The second bill of exception draws in question the applicability of the evidence to the counts of the declaration, and its sufficiency to support the plaintiffs' action. The verdict being for the plaintiffs upon the second count only, confines the inquiry to that count.
 
 
 3
 The letter upon which the action is founded was not addressed to the plaintiffs, but to John and Joseph Naylor and Company.
 
 
 4
 A person cannot take by a grant made to him by a wrong name. Moore, 197. Panton v. Chose. 1 Salk. 7. Cro. Eliz. 897. ca. 22. Field v. Wilson. Willes, 554. 556. Evans v. King.
 
 
 5
 No parol evidence is admissible to vary a written agreement. 3 Dall. 416. Clarke v. Russel. 1 H. Bl. 289. Gunnis v. Erhart.
 
 
 6
 This was a promise to pay the debt of another, and within the statute of frauds. Cowp. 227. Jones v. Cooper. 2 T. R. 80. Matson v. Wharam. 1 Salk. 23.
 
 
 7
 The written agreement must show the consideration as well as the promise. The whole agreement must be in writing. 5 East, 10. Wain v. Warlters. No parol testimony can supply the defect.
 
 
 8
 The declaration must set forth the special agreement precisely. The probata must agree with the allegata. 2 Bos. and Pul. 281. Wilson v. Gilbert. 3 Bos. and Pul. 559. Whitwell v. Bennett. 6 T. R. 363. Spalding v. Mure. 5 East, 111.note. Bordenave v. Bartlett. 3 Esp. Rep. 205. 3 Bos. and Pul. 456. Turner v. Eyles.
 
 
 9
 The plaintiffs cannot, upon this evidence, recover either upon the special counts or the money counts. 4 Bos. and Pul. 351. Cooke v. Munstone.
 
 
 10
 The letter is not an absolute guarantee, but upon condition that John and Joseph Naylor should think it necessary. There is no evidence of notice to the defendant that the plaintiffs thought it necessary. They ought to have given the defendant notice that they held him responsible, in order that he might take means to secure himself.
 
 
 11
 It was not a continuing guarantee. It is to be considered as extending only to the first importation of goods; but the plaintiffs have recovered upon the transactions of several years.
 
 
 12
 The declaration ought to have set out specially what engagements Hackett and Grant had made and failed to comply with.
 
 
 13
 Ingersoll, contra.
 
 
 14
 There are only three questions made in this case.
 
 
 15
 1. Whether the letter of credit rendered the defendant liable to the extent of the plaintiffs' demand.
 
 
 16
 2. Whether the objection, arising from the mistake in addressing the plaintiffs as John and Joseph, instead of John and Jeremiah, is not obviated by the proof, without an averment in the declaration that the same persons were meant.
 
 
 17
 3. Whether the evidence under the commission was admissible.
 
 
 18
 1. On the first point he contended, that it was apparent on the face of the letter, and from the nature of the business in which Hackett and Grant were about to engage, that a continuing guarantee was intended. And that if there was any ambiguity in the expressions of the letter upon that point, they ought to be taken most strongly against the writer, and that a letter of credit was a contract which required to be executed among merchants with peculiar good faith.
 
 
 19
 2. Parol evidence was admissible to show that John and Joseph meant John and Jeremiah, 10 Co. 124. and 125(b).
 
 
 20
 It is admitted that if the obligor be sued by the name in the bond, and it be proved by parol that the defendant delivered the bond, he is estopped to deny his name to be as in the bond. So in assumpsit, parol evidence may be given to show that the contract was made with A. by the name of B. and to show that the writing was delivered to A.It is the custom in Europe among merchants to keep the name of a firm long after all the original copartners are dead. Suppose a letter of credit addressed to the old firm be delivered to persons not named in the letter, and they furnish the goods—shall they not be entitled to recover upon this letter of credit?
 
 
 21
 In the present case, suppose there is no such person as Joseph, then his name is a surplusage, and it is a letter to John. And then what is the objection to a suit in the name of John and Jeremiah?
 
 
 22
 I may state the contract according to its legal import. If a bond be made in the name of John, and James deliver it, it is the bond of James. So may a letter addressed to John and Joseph, delivered to John and Jeremiah, constitute a contract with John and Jeremiah. It was competent to prove that Alexander Grant delivered the letter to John and Jeremiah, and that there was no other firm in Wakefield of the name of Naylor. It was not necessary to state in the declaration that the contract was in writing, nor that John and Joseph meant John and Jeremiah. If John and Jeremiah had drawn a bill of exchange in the name of John and Joseph, John and Jeremiah would have been liable. So on a policy of insurance in the name of A. but for the use of B. it is not necessary to aver it to be so, but an action may be brought directly in the name of B.
 
 
 23
 So if I direct my correspondent, having funds in has hand, to make insurance, and he fails to do so, I may charge him as insurer, without stating specially the circumstances which render him liable. So in case of executor de son tort, I charge him as executor generally, without stating the facts of intermeddling with the goods, &c. whereby he is liable to be sued as executor.
 
 
 24
 Ingersoll inquired of the court whether it was required that he should say any thing upon the execution of the commission and the depositions.
 
 
 25
 MARSHALL, Ch. J. The only doubt entertained by the court upon that point is as to the change of the issue.
 
 
 26
 Ingersoll. The case cited from Eq. Ca. Ab. furnishes the answer. In that case there was no issue when the depositions were taken, but here was an issue the same in substance as that upon which the cause was tried.
 
 
 27
 On the next day, Harper, on the same side, was stopped by
 
 
 28
 The Court, as to the point of the change of the issue, saying that the issue was in substance the same, and that the court was satisfied that the judgment was not erroneous on that account.
 
 
 29
 Harper. The cases in which parol evidence is admitted to explain a written agreement, are,
 
 
 30
 1st. Of ambiguity, and,
 
 
 31
 2d. Of mistake.
 
 
 32
 1. Of ambiguity, where it is patent, it is the province of the court to explain it from the instrument itself, and the judges cannot resort to evidence dehors.
 
 
 33
 When there is no ambiguity upon the face of the instrument, but an uncertainty arises from facts out of the instrument, (as where there are two persons of the same name and description,) there the ambiguity may be explained by parol testimony.
 
 
 34
 You may not by parol evidence vary, extend or curtail a written instrument, but you may explain it. 2 Vez. 216. Hampshire v. Pierce. Powell on Contracts, 431.
 
 
 35
 The case of Clerk and Russel was a case of patent ambiguity.
 
 
 36
 2. But we say this is not a case of latent or patent ambiguity, but of mistake, and there are many instances where a mistake may be corrected by parol. 3 T. R. The King v. The Inhabitants of Scammonden. 6 T. R. 671. Thomas v. Thomas. Powell on Contracts, 432. Cro. Car. 501. Nevison v. Whitney. 2'P. Wms. 141.
 
 
 37
 CHASE, J. There was a case of Lord Baltimore's devise to his son Benjamin, when his name was Benedict. Benedict recovered in an ejectment, having proved himself to be the person meant.
 
 
 38
 Harper. The case from 10 Co. 124. is no authority. It is the opinion of one judge only, and the other appears to have been the better lawyer. And even in that case parol evidence must have been admitted to show that there was not another corporation of that name.
 
 
 39
 There is a difference between proving that something was agreed which does not appear in the writing, and proving that it was agreed that something should be inserted in the written agreement which was omitted by mistake. 3 Wilson, 275. Meres v. Ansel. This was a mistake of Travis, the agent. It was agreed that the guarantee should be by Grant to John and Jeremiah, but by mistake it was directed John and Joseph.
 
 
 40
 3. No averment was necessary in the declaration that John and Jeremiah were the persons meant, because it was not necessary to set forth the written agreement in the declaration.
 
 
 41
 4. There can be no doubt that the guarantee was general. By the very terms of the letter the defendant undertook to guaranty any engagements which Hackett and Grant should enter into for any transaction they might have with the plaintiffs.
 
 
 42
 5. No notice was necessary to inform the defendant that a guarantee was necessary. The contract did not require notice.
 
 
 43
 Martin, in reply.
 
 
 44
 Although the name of a firm sometimes continues after some of the original partners are dead, yet when they sue they must declare that A. B. and C. trading under the name and firm of D. E. and F. &c.
 
 
 45
 So in this case, if the fact would justify them, the plaintiffs might have declared that the defendant promised the plaintiffs, trading under the name and firm of John and Joseph Naylor and Company.
 
 
 46
 The plaintiffs are bound to name all the persons entitled to be joined as plaintiffs, at their peril.
 
 
 47
 The action cannot be supported by any acts done by the plaintiffs. There can be no assumpsit in law. The whole contract arises from the letter. Its legal import must appear upon the face of it.
 
 
 48
 We offer no parol evidence to create an ambiguity, and there is none on the face of the instrument. The variance is apparent upon comparing the evidence with the declaration.
 
 
 49
 It is true that equity will interpose in some cases of mistake, where it was agreed that something should be inserted in the writing, which was not done, and the writing was drawn by the other party; or where there is any thing omitted through fraud, one party being illiterate, &c. But here the plaintiffs were not bound to part with their goods upon such a letter; it was their own follv to do it. They made no mistake.
 
 March 29.
 
 50
 MARSHALL, Ch. J. delivered the opinion of the court, as follows:
 
 
 51
 In this case three points are made by the plaintiff in error on the letter which constitutes the basis of this action. He contends,
 
 
 52
 1st. That this letter being a collateral undertaking, and being addressed to John and Joseph Naylor and Co. the plaintiffs below cannot be admitted to prove by parol testimony that it was intended for and is an assumpsit to John and Jeremiah Naylor.
 
 
 53
 2d. That the undertaking was conditional, and required notice to be given to the writer of the intent and nature of his liability.
 
 
 54
 3d. That it is confined to the shipments made during the year in which it was written.
 
 
 55
 On the first objection the court has felt considerable difficulty. That the letter was really designed for John and Jeremiah Naylor cannot be doubted, but the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and a wise policy, which this court cannot relax so far as to except from its operation cases within the principles.
 
 
 56
 Already have so many cases been taken out of the statute of frauds, which seem to be within its letter, that it may well be doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. The best judges in England have been of opinion that this relaxing construction of the statute ought not to be extended further than it has already been carried, and this court entirely concurs in that opinion.
 
 
 57
 On examining the cases which have been cited at the bar, it does not appear to the court that they authorise the explanation of the contract which is attempted in this case.
 
 
 58
 This is not a case of ambiguity.
 
 
 59
 It is not an ambiguity patent, for the face of the letter can excite no doubt.
 
 
 60
 It is not a latent ambiguity, for there are not two firms of the name of John and Joseph Naylor and Co. to either of which this letter might have been delivered.
 
 
 61
 It is not a case of fraud. And if it was, a court of chancery would probably be the tribunal which would, if any could, afford redress.
 
 
 62
 If it be a case of mistake, it is a mistake of the writer only, not of him by whom the goods were advanced, and who claims the benefit of the promise.
 
 
 63
 Without reviewing all the cases which have been urged from the bar, it may be said with confidence that no one of them is a precedent for this.
 
 
 64
 A letter addressed, by mistake it is admitted, to one house, is delivered to another. It contains no application or promise to the company to which it is delivered, but contains an application and a promise to a different company not existing at that place. The company to which it is delivered are not imposed upon with respect to the address, but knowing that the letter was not directed to them, they trust the bearer, who came to make contracts on his own account. In such a case the letter itself is not a written contract between Daniel Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol proof to make it such a contract, is going further than courts have ever gone, where the writing is itself the contract, not evidence of a contract, and where no pre-existing obligation bound the party to enter into it.
 
 
 65
 It being the opinion of a majority of the court that John and Jeremiah Naylor could not maintain their action on this letter, it becomes unnecessary to consider the other points which were made at the bar. It is the opinion of this court that the circuit court erred in directing the jury that the evidence given by the plaintiffs in that court was proper and sufficient to support the issue on their part. The judgment of the circuit court is, therefore, to be reversed, and the cause sent back for further trial.
 
 
 66
 Judgment reversed.
 
 
 
 *
 Harper. The rule of the court below is that no commission shall issue until ten days after interrogatories filed. It is to be presumed that the clerk did not disobey the rule of court. The commissioners have returned the interrogatories with the depositions.
 
 
 **
 On the first trial a juror was withdrawn, and the plaintiff had leave to amend. Upon which he filed a new declaration, and a new issue was made up, in substance the same as the first.