Rannet,' J.
Among the variety of reasons assigned by the plaintiffs in error, why their demurrer to the declaration should have been sustained, and of the errors assigned, why this judgment should be reversed, two only are relied upon by their counsel, in argument.
First. It is claimed that the declaration is bad, as it does not show that the claim of Lee was ever presented to the executors, and allowed or disallowed by them, and that the presumption from the lapse of time between the accruing of the action *and the commencement of his suit, is that the claim was barred ; and that it is not averred that payment of the judgment was demanded before the commencement of this suit. To sustain this position, we are referred to sections 90 and 182 of the “act to provide for the settlement of the estates of deceased persons.” Swan’s Stat. 354, 373. By the first of these sections, a creditor is required to commence suit within six months after his claim is disputed or rejected by the executor or administrator, and on failure to do so, ho is “ forever barred from maintaining any action thereon.” By the last, it is provided that after the creditor is entitled to the payment of his debt, and the same has been allowed or liquidated by judgment, award, or order of distribution, he may sue the bond of the executor or administrator, if he neglects, “ upon demand made, to pay such claim.”
This case does not require us to put a construction upon these sections. A recurrence to the dates will plainly show that they have nothing to do with the case. The bond in suit was entered into on August 10, 1839. The act referred to took effect ón November 1, 1840. Section 247 repeals all previous laws upon the subject, but with the following saving clause: “ Provided, however, the repeal of said acts shall not affect any act done, or any right, liability, or estate, accruing or accrued, or any suit, matter or proceeding, had, or commenced; but the same shall be determined, and remedies for the same had, and all estates in the course of settlement by an executor or administrator, at the time this act takes effect, shall be settled under said acts.” The “ liability ” upon this bond had then “accrued;” the estate was in the course of settlement, and of course'the “remedies” upon it must be sought under the laws then in force; and we think the plaintiff, so far as this point is concerned, clearly within their provisions.
The second position relied upon by the plaintiff’s counsel is, *83 that the bond is insufficient to secure the performance of the ^duties of the executors of Joseph L. Findley, James L. Findley being named in the condition.
To this it is replied that the name of James was used instead of Joseph by a mistake of the clerk; that it was intended as a bond for the executors of Joseph D. Findley, and that the averments of the declaration are sufficient to apply it to his estate, and to charge the defendants for the default of his executors. From the face of the bond it does not appear that the defendants became sureties for the executors of Joseph L. Findley. The question arising is, can this be shown by averment and proof outside of it? Can a bond, not appearing to have any connection with that estate, be shown to have such connection by parol?
The defendants are sought to be charged for the default of others. By positive law, this can only be done when the obligation exists in writing. They are mere sureties, and, as such, may demand to be brought strictly within the terms of the obligation before they are charged. It is true, that a contract falling within the statute of frauds may be enforced, if plainly made out in all its terms, from any writing of the party, or even from his correspondence. But, as stated by Mr. Greenleaf (1 Greenl. Ev. 318), “ it must all be collected from the writings, verbal testimony not being admissible to supply any defects or omissions in the written evidence.”
The rule to be applied to the undertaking of sureties is very clearly and satisfactorily settled. The Supreme Court of the United States, in the case of the United States v. Boyd, 15 Pet. 208, thus states it: “This court held, in Miller v. Stewart, 9 Wheat. 702, that the liability of a surety is not to be extended, by implication, beyond the terms of his contract; that his undertaking is to receive a strict interpretation, and not to extend beyond the fair scope of its terms, and that the whole series of authorities proceeded on this ground.” See also Sprigg v. Bank of Mount Pleasant, 14 Pet. 208. In Evans v. Bradley, 17 Wend. 422, the Supreme Court of New York hold this language: “Where there is no ^'uncertainty upon the face of the instrument, or where, in cases of doubt, we have ascertained the true meaning of the contract, the liability of a guarantor or surety can not be extended by implication or otherwise. The case must be brought strictly within the terms of the guaranty, or the guarantor will not be *84 liable. The cases speak a uniform language upon that subject.” And again, in Hunt v. Smith, 17 Wend. 180, Judge Cowan says, “ the terms of the guaranty must be exactly pursued or the guarantor is not liable at all.” This court has been equally explicit upon the subject. In the case of the Bank of Steuben-ville v. Carroll’s Adm’rs, 5 Ohio, 214, it is said that “no principle is bettor settled at the present day, than, that a surety can not be further bound than by the terms of his undertaking.” In the case of The State v. Modary et al., 17 Ohio, 565, it is thus forcibly stated : “The bond speaks for itself, and the law is that it shall so speak; and that the liability of sureties is limited to the exact letter of the bond. Sureties stand upon the words of the bond, and if the words will not make them liable nothing can. There is no construction, no equity against sureties. If the bond can not have effect according to its exact words, the law does not authorize the court to give it effect in some other way, in order that it may prevail.”
The principles settled in these authorities would seem to be decisive against the validity of this bond, and to supersede the necessity of further inquiry. But the case of Grant v. Naylor, 4 Cranch, 224, decides the very question now under consideration. It was an action of assumpsit, brought upon a letter of guaranty, addressed by the plaintiff in error to John and Joseph Naylor & Co. The name of the firm for which it was intended, was John and Jeremiah Naylor & Co., who advanced goods upon it, and the principal having failed to pay, brought this action against the guarantor to recover the amount. The court held that the plaintiff below could not be admitted to prove, by parol testimony, that it was intended for, and was an assumpsit to John and Jeremiah Naylor & Co. C. J. ^Marshall, in delivering the opinion of the court, says: “That the letter was really designed for John and Jeremiah Naylor, can not be doubted; but the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and wise policy, which this court can not relax so far as to except from its operation cases within the principle.”
“Already have so many cases been taken out of the statute of frauds, which seem to be within its letter, that it may well be doubted whether the exceptions do not let in many of the mis *85 chiefs against which the rule was intended to guard. The best judges in England have been of opinion that this relaxiug construction of the statute ought not to be extended further than it has already been carried, and this court entirely concurs in that •opinion.
“ The letter itself is not a written contract between Daniel Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol proof, to make it such a contract, is going further than courts have ever gone, where the writing is itself the contract, not evidence of the contract, and, where no pre-existing obligation bound the party to enter into it.”
T?e are of opinion that the bond in this case can not, hy parol evidence, be made applicable to the estate of Joseph L. Eindley, and that the court of common pleas erred in overruling the demurrer filed to the declaration.
Eor this cause, the judgment of that court is reversed.