Ranney, J.,
delivered the opinion of the court.
The sufficiency of the declaration is the question here, as it was in the court below; and the argument has allowed us to confine our inquiry to a single point: Does the misrecital in the condition of the bond, as to the amount of the judgment enjoined, necessarily release the surety? We state the question thus because we are unable to see how any other mode of declaring would have placed the plaintiff’s ease in a better situation. The pleading makes the best of the contract, and if it is not sufficient it is because the contract itself is invalid. It is claimed to be so by the defendant’s counsel, and especially the declaration is insisted to be bad: 1st. Because the bi*eaeh alleged in the declaration is broader than the condition of the bond, covering a different and larger judgment; 2d. because it is an attempt to contradict or change a written contract by parol evidence ; 3d. because the bond against the surety is a contract within the statute of frauds, thereby constituting an additional reason why parol evidence can not be let in to charge a surety, he being only liable according to the strict letter *166 of his contract, and if not so liable he is not liable at all; and 4th. because the failure of Hampson to pay the particular judgment, specified in the condition is a condition precedent to the liability of the surety, and both parties are estopped from setting up any other.
*These positions have been ably sustained by counsel, and we have no hesitation in yielding them our entire assent. If this declaration is open to either objection it is undoubtedly bad. The applicability of these principles to the cáse in hand, rather than their abstract correctnesses, therefore, the question before us.. The bond described in the declaration is an injunction bond in the penal sum of three thousand dollars, the sum fixed by the court allowing the injunction, and so far as this part of it is concerned, is clear, definite and accurate. It, however, contains a condition of defeasance, which prescribes upon what terms the obligation contained in the penal part may be avoided, to wit: the payment by Hampson of the judgment enjoined in case the injunction should be dissolved. Because the plaintiffs were obliged to aver the issuing and return of an execution upon this judgment, as well as the dissolution of the injunction, they were compelled to spread out this condition of defeasance in their declaration and to assign the breach upon it, which consisted of the non-payment of the judgment described in it. They describe the judgment actually enjoined, as of a given court, date and amount, and aver that the injunction bill so described it accurately ; and that the judgment and injunction bill recited in the condition of the bond, referred to and was intended for the same identical judgment therein correctly described ; although the recital was erroneous in one particular—the amount of the judgment. The whole question, therefore, turns upon the sufficiency of this description as gathered from the bond itself and the records therein referred to. That these records thus referred to may be resorted to in construing the bond, and in fact become a part of the bond itself for that purpose, is too clearly settled to be doubted. As stated by Chief Justice Marshall in United States v. Maurice, 2 Brock. 114: “If, instead of specifying the particular purposes for which the money was received, the condition of the bond refers to a paper which does specify those purposes, I know of no principle of reason or of law which varies the obligation of the instrument from *what it would be if containing that specification within itself. That is certain which may *167 be rendered certain, and an undertaking to perform the duties prescribed in a distinct contract, or in a law, or in any other known paper prescribing those duties, is equivalent to an enumeration of those duties in tho body of the contract itself.” Another rule equally well settled, and not in the least conflicting with any principle contended for by the defendant’s counsel, allows extrinsic parol evidence to be given, to give effect to a written instrument by applying it to its proper subject-matter, by proving the circumstances under which it was made, thereby enabling tho court to put themselves in the place of the parties, with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties. Hildebrand v. Fogle, 20 Ohio, 147.
In applying these principles to this case, we find a distinct reference in the condition of the bond to the injunction bill allowed to-be filed in Fairfield county; and the averments of the declaration bring distinctly before us the fact that that bill contains an accurate description of the judgment. The bond undertakes to recite and describe the object of that bill to be, to enjoin a judgment of-a certain specified amount; but the proceeding itself, in effect, brought before us in the same bond, shows the description to be inaccurate. The bond itself thus furnishing the means for its own correction. It seems to us, if there ever was a case for the safe application of the maxim “id cerium est quod eertum reddi potest,” it is one thus circumstanced. The statute does not require the bond to contain a particular description of the judgment; it would be all-sufficient to refer to the bill for that purpose, and everything in the recital of this bond as to those particulars could be stricken out, and still it would bo certain and sufficient. Is it less certain when the thing itself is brought before us because the party has made an unnecessary false description of it? Where both are before us, can we violate any principle of the law in correcting the description by the *thing described? We think not. And in this conclusion we think we are fully sustained by tho authorities cited. In tho case of Colburn v. Downs, 10 Mass. 20, a bail-bond was hold good, although tho Christian names of both the plaintiffs were mistaken from the further description given in the bond, representing them as “ of Boston, in tho county of Suffolk, merchants and co-partncrs in trade, jointly negotiating in businoss, under the firm of Colburn & Gill.” In Scott v. Hornsby, 1 Call. 35, a forthcoming bond was *168 enforced by the court of appeals of Virginia, although the amount of the execution was incorrectly stated in the condition. In the case of Houston v. Belcher, 12 S. & M. 514, on an attachment bond, the term of the court at which the writ was returnable was mistaken. Mr. Justice Clayton, in delivering the opinion, says: “Was the bond defective? We think not. There was no error in the obligatory part of the bond. It was in a recital not necessary to the validity of the obligation.” In Laidren v. Featherston, 10 S. & M., on a title bond, the amount stated in the recital differs from the affidavit; but the bond was held good. A like decision was made in Walker v. Shotwell, 13 S. & M. 544.
The case of McGovney v. The State, 20 Ohio, 93, is claimed to be, in principle, like the present. We have carefully re-examined the case, and are entirely satisfied with the decision; nor do we regard it as in the least conflicting with the views above expressed. That was an executor’s bond, and the name of the testator was mistaken. The condition contained no reference whatever to any record or paper by which it could be corrected; and the question was whether parol evidence was admissible for that purpose. The court held that it was not, and recognized the soundness of the rule laid down by Mi*. Greenleaf that such a contract might be made out by any writing of the party or even from his correspondence, but that “ it must all bo- collected from the writings, verbal testimony not being admissible to supply any defects or omissions in the written evidence.” 1 Greenl. Ev. 318. If in this case the attempt were to resort *to such verbal testimony, we should at once say it could not be done. But no such attempt is made; the party is charged upon his bond and the written evidence referred to in it. All its terms are thus made out in writing; and all we decide is, that this unnecessary and erroneous description of the injunction proceeding does not preclude us, when we are expressly referred to it in the bond, from looking to it for the truth, nor from giving effect to the truth when thus discovered. This ruling leaves no possibility of fraud, perjury or mistake. The record is as certain as the bond; and both may be clearly identified and subject to no change or uncertainty.
Since the argument of the cause another objection to the declaration has been suggested. It is claimed that the plaintiff should have averred that the bond was approved by the clerk. Without at this time deciding whether such an averment is indispensable, *169 we are satisfied that it is substantially made in the declaration; at least, so as to be sufficient on general demurrer. It is averred that the bond was executed in pursuance of the order of court, was filed with the clerk, and that thereupon the injunction issued, etc. The statute requires no endorsement of approval, and, if the facts averred existed, it was a sufficient approval.
A majority of the court are of opinion that the judgment should . be reversed and the cause remanded.
Corwin, J.
As I am unable to concur with my brethren in the opinion pronounced in this ease, it may bo proper to indicate the considerations which have led me to a different conclusion. If it were'a more matter of pleading or practice, I should not consider it important to express my dissent; but, in my judgment, this decision goes to the merits of the controversy, and involves rules of construction and adjudication which establish a new and important precedent, and which are worthy of deliberate consideration.
That a surety can only be bound by the letter of his contract, and can not be made liable by implication or construction, is well established by all the authorities, and conceded *in the opinion of the court in this case. But it is said that the penal part of the bond is the contract for the payment of the money, and that the condition of the bond is no part of the contract to pay, but simply fixes the terms upon which the contract to pay may be defeated.
This looks well enough in theory, for, in truth, the penal part of the bond contains the only express promise to pay money; and if executed by itself, and without condition, would undoubtedly constitute of itself a good cause of action. But the condition of an injunction bond is as material as any other part of the contract, from which the liability of the surety is to be ascertained, A simple unconditional bond for the payment of money is not an injunction bond—it is not such a contract as was signed by the defendant— it is not such a contract as is averred in the declaration. The obligee can not declare upon this contract without setting out its condition, and averring that an execution had issued upon the judgment recited in the condition, and averring the breach of that condition.
But independently of any consideration of pleading, upon such a bond, and regarding the true character of the contract in a plain practical view, the condition is not only in form and substance *170 a material part of the contract; but, in fact, the amount of the judgment described in the condition of the bond is the only measure of the legal or equitable liability of the obligor. The sum specified in the penal part of the bond, only fixes an amount beyond which the liability of the obligor shall not be extended in any event; and the real liability incurred is, not to pay the penalty of the bond absolutely, but that he will make good the default of the judgment debtor, to pay such decree as may be rendered against him, on account of the judgment specified in the condition of the bond. And this is the extent of his legal liability, whatever may be the penalty named, and by whomsoever, as a matter of pleading, the condition of the bond is brought upon the record..
A court has no authority to presume that a surety in a bond has intended to describe any thing else than what he has described. *'And even if such intentions were manifest, it would be an unwarranted exercise of judicial authority to hold a surety liable for having intended to assume a responsibility, which, in point of fact, lie had not assumed, and, with reference to which he was under no moral or equitable obligation. The amount of the judgment proposed to be enjoined is the great, if not the only important consideration with a man about to become surety on a bond to enjoin such judgment. It is comparatively unimportant to him to know what court rendered such judgment, or at what term it was rendered, or what was the original'cause of action. This liability of the surety being limited to the amount of the original judgment, with accruing interest and costs, the amount of suck judgment is of the very essence of his contract. And when a surety has, in express words, in his contract of suretyship, defined and limited the only basis of liability which he is willing to incur, I am at a loss for authority upon which a court will presume, from circumstances which are not only comparatively unimportant, but which would scarcely even attract the attention of such surety, that he meant and intended to, and therefore did adopt another and wholly different basis of liability.
' In Grant v. Naylor, 4 Cranch, 224, C. J. Marshal, in delivering the opinion of the court, says, “that the letter was really designed for John and Jeremiah Naylor (although addressed to John and Joseph Naylor & Co.,) can not be doubted, but the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained *171 by parol testimony, originate in a general and wise policy, which this court can not relax so far as to except from its operation cases within the principle.” And again in the same case it is said: “To admit parol proof to make it such a contract, is going farther than courts have ever gone, when the writing is itself the contract, and not evidence of a contract, and when no pre-existing obligation bound the party to enter into it.” And so are all the authorities.
*This is not a case for the application of the maxim, “id cerium est quod cerium reddi potest,” and none of the authorities recognizing that doctrine, which are cited by counsel, and adopted by the court, have, in my judgment, any applicability to the real question in the case; for the very obvious reason, that the bond is certain of itself There is no ambiguity about it. It is upon its face a good bond, and it is useless to inquire whether we may make certain, that which is already certain. The real question is, whether a bond, clear, unambiguous, certain and explicit—embracing one specific and clearly-defined subject-matter, may, by averment and proof, be applied to another subject-matter, materially different, and with which the matter of the bond has no connection. I maintain that it can not be so applied, and that the cause of action set out in the declaration in this case is unsupported by reason or authority.
But this conclusion is avoided by the court, upon the assumption that the judgment averred in the declaration is correctly described in the bill in chancery, upon which the injunction was allowed; and that by the recital in the condition of the bond, that “ injunction had been allowed,” etc.—the bill in chancery was so referred to as that the description of the judgment in such bill in chancery, may be adopted, and the particular description of the judgment in the condition of the bond itself may be rejected. To this proposition I am constrained to dissent, for various reasons:
In the first place, there is no such reference to the bill in chancery, as to make it descriptive of any thing in the bond. A bill in chancery is nowhere mentioned or referred to in terms in any part of the injunction bond. It is true, it does recite that an injunction has been allowed; but whether upon a bill in chancery, or that it had been allowed upon any particular bill in chancery, containing any particular description of a judgment, is not said in the bond. Undoubtedly the bond would have boon a good one if it had referred to the bill in chancery for a description of the judgment to be *172 enjoined, and the judgment described in such bill in chancery, so for *that purpose referred to, would have been as clearly
the basis of the liability of the obligor, as though the same judgment were specifically recited in the bond itself. The bond would thus effectually adopt the description of the bill in chancery. But it is not so here; on the contrary, without adopting any other description, or relying upon, or referring to, any other description, the obligor himself, in his own bond, describes specifically the judgment, for the ultimate payment of which he binds himself. And this precludes any other description.
In considering this proposition, it can not be fairly said, “that by the mere recital, an injunction had been allowed,” the party adopted, as a part of his contract, the bill in chancery upon which such injunction may have been allowed; and he ought not to be held to such a rule of construction; for he may not know whether such injunction is allowed at all upon a bill in chancery, or upon mere motion. He knows nothing of a bill in chancery; he is not responsible for the truth or falsity of any of its allegations. He does not know what his principal may allege in the proceeding in which ho seeks relief, or on what grounds he may maintain himself, or what means of relief he may resort to. He does know the extent of the obligation specified in the bond presented to him for signature. and I think he ought to be permitted to know that he shall not be subjected to any liability, except upon the terms and conditions of the bond he signs.
It ought to be a sufficient answer, to say that the bond contains no express words of adoption of, or reference to, the bill in chancery which it is averred describes the judgment set up in this declaration. But if this is not sufficient, and if it may be said that such adoption of the bill in chancery may be ascertained by construction, what is the consequence?
The bill in chancery describes a particular judgment, which it seeks to enjoin. An injunction is allowed on said bill in chancery to enjoin the judgment therein described. Upon application for the writ, a bond is presented describing ^another and a wholly different judgment. Can any one say that the judgment described in the bill in chancery is enjoined, or may be enjoined, by a bond particularly describing and applying to another judgment? Certainly not. A writ of injunction could never properly issue upon 6uch a bond; and if it had so issued by mistake or inadvertence, *173 the court would not continue its injunction on such bond; but, in the absence of a bond applying to the judgment enjoined, would at once dissolve the injunction, so inadvertently issued.
This is not a case of a mere mistake in one of several items of description in a bond. According to the declaration, it is all mistake. The supreme court did not, at the term mentioned, render such a judgment as is recited in the condition of the bond. The condition of the bond does not apply to the judgment averred in the declaration. It never could have operated to enjoin such judgment. The bond never performed any function—was inoperative as to the judgment introduced by averment—was a mere nullity as to everything except the judgment which it recites, and to which, by its terms, it is applicable ; and, unless such a judgment as the bond describes is shown to exist, and the bond has operated upon such judgment, it has not, and never had force or vitality—it is merely void.

Judgment of the common pleas reversed.