Ham *v.* Goodrich.

# HAM *v.* GOODRICH & *als.*

Upon a bill in equity, praying for the specific performance of a verbal agreement to convey land, the part performance required to take the case out of the operation of the statute of frauds must be such as to place the party seeking the specific performance in the situation to be held liable as a wrong-doer, on account of the acts done in part execution of the agreement, and against which liability he would be protected by its complete execution.

Possession of the land is not such part performance, unless the possession be delivered in pursuance and part execution of the agreement charged in the bill, and the party exercising the possession would be liable therefor as a wrong-doer, without the specific performance prayed for.

By an agreement between a father and his son, that if the son with his family would come and live with the father, and take care of him and of the farm so long as he should live, he would give the son the farm, it is not implied that the father will give up the possession of the farm to the son during the life of the father — such possession not being necessary for the fulfillment of the proposed conditions.

Such an agreement is to be construed as a contract by the father to give to the son, in case he should fulfill the conditions proposed, a title to the farm by a testamentary devise, or some instrument of conveyance, to take effect at the death of the father, and such agreement being charged in the bill, possession of the farm by the son, during the life-time of the father, is not possession delivered in part execution of the agreement charged.

If, however, it is to be considered as implied in the agreement thus charged, that the son should have the possession during the life-time of the father, and thus the possession be held to be in part execution of the agreement; yet it is not such part performance as will take the case out of the statute, as the complete performance of the residue of the contract — the conveyance of the title at the death of the father — will not have the effect to protect the son against liability as a wrong-doer, on account of exercising the possession in the life-time of the father.

BILL IN CHANCERY, in which the complainant alleges that his father, Robert Ham, deceased intestate, was seized at his death, and for many years prior thereto, of a farm in Portsmouth, which was his homestead; that, about twelve years before his death, the wife of said Robert, and mother of the complainant, died, and for some time thereafter the said Robert lived alone on said farm; that he applied to the complainant, and requested him to come with his family and live with said Robert, and take care of him and of his farm so long as he should live, and promised and agreed with the complainant, if he would do so, to give him said farm; that the complainant thereupon went with his wife and family to live with said Robert, and took possession and care of said farm, and continued to live with him, and to have the charge, possession, management, and entire control of the farm until his death; and that the complainant and his wife devoted themselves to the service of said Robert, and provided and did for him all that was necessary for his support and comfort until he died. It is further alleged in the bill, that when the complainant took possession of the farm and went to live with his father, the house and barn upon the farm were greatly out of repair, and before the death of said Robert were repaired at a considerable expense, nearly the whole of which was paid by the complainant, under the expectation that at the death of said Robert the farm would become the complainant's property, according to the said agreement; that said Robert did not during his life-time make and execute any deed or other conveyance of the farm to the complainant, nor did he at his decease leave any will, but died intestate; that Goodrich, one of the defendants, is administrator of the goods and estate of said

Robert, and the other defendants are his heirs at law. The bill prays that the defendants may be compelled by a decree of this court specifically to perform the promise and agreement of said Robert, and to execute proper and sufficient deeds of said farm, conveying to the complainant the title which he had at his decease, and for general relief.

The answer of the defendants sets forth that they were never informed, save by the complainant's bill, that said Robert applied to the complainant to take care of him or of his farm so long as he should live, nor for any time, nor that said Robert promised the complainant, if he would do so, that said Robert would give him the farm; but on the contrary that they believe it to be true that the complainant, soon after the death of said Robert's wife, wished to remove with his, the complainant's wife and family, to the house of said Robert, and that said Robert allowed the complainant, as a favor to him, the complainant, to come and reside with the said Robert; that the complainant went with his family to reside with said Robert, and continued to reside with him for about twelve years, until his death; that the defendants never knew nor heard, save by the complainant's bill, that the complainant ever took the possession or care of the farm, or that the complainant or his wife devoted themselves to the service of said Robert, or provided or did any thing for his support, but that they have been informed and believe the contrary to be true. The answer denies that the complainant at any time had the possession or control of the farm, or that he or his wife ever performed any other work or services for said Robert than to pay him for their support; and sets forth that the defendants do not know and cannot state upon what expectations the complainant went to reside with said Robert; and that they were never informed, and do not believe, that said Robert ever agreed to give to the complainant the farm, or ever intended that he should have more than his distributive share of said Robert's estate; that the house and barn were not so much out of repair as to require any considerable outlay, and that whatever repairs were made, were done at the expense of said Robert, and not at the expense of the complainant.

The answer admits that said Robert did not in his life-time make or execute any deed or other conveyance of the farm to the complainant, and that he died intestate. And the defendants in their answer insist upon the statute of frauds as a bar to the maintenance of this suit, claiming the same benefit from the statute as if they had pleaded the same.

Evidence was taken upon the matters alleged in the bill and denied by the answer, and the cause was heard upon the bill, answer, and proofs.

*Emery* and *Hatch*, for the plaintiff.

*Hackett* and *Christie*, for the defendants.

SAWYER, J. The bill in this case seeks the specific performance of a contract for the sale of land, within the meaning of sec. 7 of chapter 180 of the Revised Statutes, commonly called the statute of frauds, which provides that no action shall be maintained upon any such contract, unless the agreement upon which such action shall be brought, or some memorandum thereof, is in writing.

No agreement in writing is set out in the bill, and none is claimed to have been executed, but the bill sets forth facts which the complainant contends amount to a part performance of the contract, of such character as to take the case out of the operation of that statute, and to entitle him to the specific performance which he seeks.

The answer of the respondents, while it denies the agreement charged in the bill, insists upon the statute as a bar to the maintenance of this suit upon any such agreement, and also denies the principal facts relied upon by the complainant as constituting part performance, and proofs have been taken by the parties upon the matters of fact at issue between them.

The proofs taken by the parties upon the principal facts alleged in the bill, and denied by the answer, need not be examined and considered, for we are of opinion that the bill cannot

be sustained upon well settled principles of equity, even if it be assumed that the facts charged in reference to the agreement of Robert Ham, to give the farm in question, and in reference to its possession and management by the complainant, are sustained by the proof.

Courts have sometimes been led to express regret that any exceptions should have been made by judicial construction to the operation of the statute of frauds, as tending, in the case of many, if not all of those exceptions, to let in the very mischiefs against which the statute was designed to guard. Whether this view be just, to the extent of excluding all exceptions not mentioned in the statute itself, may, perhaps, admit of question. But at least it has now come to be the well settled conviction of courts on both sides of the Atlantic, that the authorities have gone in some points much farther, and in all quite as far, in excepting contracts from the operation of the statute, on the ground of part performance, as a sound and wise policy will warrant. *Grant* v. *Naylor*, 4 Cranch 224; *Lyndsay* v. *Lynch*, 2 Schoales & Lefroy 1; *Foster* v. *Hale*, 3 Vesey, Jr., 712; *Cooth* v. *Jackson*, 6 Vesey 32–37.

It would seem formerly to have been held that payment of the purchase money, and even of a part of it, or at least of a very considerable part of it, was such part performance as to take the case out of the statute. This is not to be reconciled with numerous cases of great authority, which have established the doctrine that the ground upon which courts of equity proceed in such cases is, that to permit the statute of frauds to be set up would be to make a case of that species of fraud cognizable only in equity. The complete performance by one of the parties to the contract of all the stipulations, on his part constituting the whole consideration for the agreement of the other party, is not of itself now regarded as such part performance as is necessary to take the case out of the statute.

In *O'Herliky* v. *Hedghes*, 1 Sch. & Lef. 130, the Lord Chancellor *Redesdale* says: " The ground on which a court of equity goes in cases of part performance is, that it is a sort of fraud

cognizable in equity only;" and he adds that Mr. Justice *Buller*, though he had in one or two instances said that part performance takes the case out of the statute, at law as well as in equity, yet, on being pressed with the consequences of that opinion in case of a demurrer to evidence, was obliged to abandon the position.

In *Chinan* v. *Cook*, Ib. 41, the learned chancellor says that payment of the purchase money is not to be considered sufficient part performance to take a case out of the statute, and that nothing is which does not put the party into a situation that is a fraud upon him, unless the agreement is performed: as, for instance, if a man, upon a parol agreement, is admitted into possession, he is made a trespasser, and liable to answer as such, if there is no agreement. "This," he continues, "is put strongly in *Foxcroft* v. *Lister*, cited in Prec. in Ch. 519, and also in 2 Vern. 459, where the party was let into possession on a parol agreement, and it was held that he ought not to be liable as a wrong-doer, and to account for the rents and profits. That is the ground upon which courts of equity have proceeded in permitting part performance of an agreement to avoid the statute, and I take it that nothing is to be considered as part performance which is not of that nature. Payment of money is not part performance, for it may be repaid, and then the parties will be just as they were before. It does not put a man who has parted with his money into the situation of one against whom an action may be brought; for in that case of *Foxcroft* v. *Lister*, which first led the way in establishing the doctrine, if the party could not have produced in evidence the parol agreement, he might have been liable in damages to an indefinite extent."

In the case of *Chinan* v. *Cooke* the bill was dismissed because the part performance set up did not come within the principles thus laid down; and it was expressly settled in that case that payment of the purchase money was not sufficient. The same doctrine is found in *Savage* v. *Foster*, 9 Mod. 37.

In Sugden on Vendors, page 83, the principle on which courts of equity interfere to decree specific performance, is

stated to be in order to protect the party from that species of fraud which is cognizable in equity only ; that one side may not take advantage of the statute, to be guilty of such fraud upon the other. And it is declared to be necessary that the act should unequivocally refer to and result from the agreement, as done in partial execution of it, and that it must be such that the party would suffer an injury amounting to fraud by the refusal to execute the agreement.

From an able review of all the cases upon the subject, this learned writer draws the conclusions that even before the statute of frauds in England, when part performance was as necessary for a decree of specific performance of a parol agreement as since, payment of a part of the purchase money certainly, unless it were of a substantial part, was not sufficient ; that the case of *Moyl* v. *Hone*, Tothill 67, upon which the doctrine that payment of a substantial part would be sufficient, mainly rested, was too vague to be relied on as an authority upon that point ; that after the statute, until the case of *Lacon* v. *Mertins*, 3 Atk. 1, decided by Lord *Hardwicke*, it was uniformly held that payment of the purchase money was not part performance to take the case out of the statute, though equity would compel the refunding of the money ; that the opinion expressed by Lord *Hardwicke*, in *Lacon* v. *Mertins*, that the payment of money was to be considered as part performance, was extra judicial, there being proved in the case facts which have always been deemed part performance, namely, possession delivered and money expended in improvements ; and that, by the admirable judgment of Sir *William Grant*, in *Butcher* v. *Butcher*, 9 Vesey, Jr., 382, and of Lord *Redesdale*, in the cases cited of *Chinan* v. *Cooke*, and *O'Herliky* v. *Hedghes*, denying payment of the purchase money to be such part performance, the question was probably put at rest.

In *Wetmore* v. *White & als.*, 2 Caine's Cases in Error, it is said by *Thompson*, J., that payment of the consideration money has always been held to be part performance ; but the opinion thus expressed is not based upon a review of the authorities,

and the only case cited in support of the position is the case of *Lacon* v. *Mertins.* Like the *dictum* of Lord *Hardwicke* in that case, the opinion of *Thompson,* J., is extra judicial — the same facts — possession delivered and money expended in improvements — existing in that case as in the case of *Lacon* v. *Mertins.*

In 1 Mad. Ch. 301, the principle to be extracted from the cases is laid down precisely as declared by Sugden. The payment of money, either in part by way of earnest, or in full for the purchase, is stated by this writer also to be insufficient — though the cases, he says, would seem to be contradictory. Ib. 304.

The ground thus distinctly presented for the proceedings of a court of equity in decreeing specific performance in such cases, is fraud — not merely of that nature which may be said to exist in every case of a refusal to fulfill an agreement after having received the consideration, but which consists in placing the other party in a situation to be held liable as a wrong-doer, or in some other way of being made the victim of a fraud, or of an injury in the nature of a fraud, on account of acts done in part execution of the agreement, unless protected by its complete fulfillment.

The same views are expressed in Newland on Contracts, chap. 10, p. 187, and 1 Fonbl. Eq., book 1, chap. 3, sec. 38.

Story, in his treatise on Equity, declares that the doctrine which some of the cases would seem to sustain, that payment of the purchase money is such part performance as takes the agreement out of the statute, and which for a time was open to much controversy, is now to be considered as finally overthrown, and states the general ground which ought to be the governing rule in such cases to be, that nothing is to be considered as a part performance which does not put the party into a situation which is a fraud upon him, unless the agreement is performed. It is possible that cases may arise calling for the exercise of the power of the court to decree a specific performance of such a character as not to admit of the application of the rule in the

terms in which it is thus enunciated ; but the principle involved in it, that, without the specific execution sought, the party seeking it must suffer an injury in the nature of a fraud arising from the acts constituting the part performance, and aside from and beyond the injury directly resulting from the non-performance of the contract by the other party, would seem to be the only approved principle to be extracted from the authorities on the subject. To go beyond this would be to exercise the power of dispensing with the statute, rather than of giving it a sound construction. Indeed, there is no middle ground upon which to stand, between this and the broad rule that specific performance is to be decreed in all cases where either party has executed the agreement in any of its essential particulars, and has something to obtain by the full execution of it beyond the receipt of money, or something for which money in the form of damages in a suit at law may be a full equivalent.

To determine whether in this case there has been such part performance as to take the case out of the statute, it becomes necessary to inquire what is precisely the agreement, in all its terms, express and implied, which is set out in the bill, and the specific performance of which is sought to be enforced. It is charged in the following terms, " that Robert Ham, the father of the complainant, applied to the complainant, and requested him to come with his family and live with him, the said Robert, and take care of him and of his farm as long as he should live ; and promised him, the complainant, if he would do so, that he, the said Robert, would give to the complainant his, the said Robert's, homestead farm." This is the whole of the agreement — a promise by the father that if the son would do certain things he would give him his homestead farm. When ? Manifestly when the terms should be complied with — when the son should have lived with the father, and taken care of him and of his farm during the life of the father ; thus clearly implying that the farm was to be given by a testamentary devise, or by some instrument of conveyance, to take effect at the decease of the father ; like a covenant to stand seized during life to his own

use, and at his death to the use of his son, upon condition that the terms proposed should be fulfilled by him. But whatever mode may have been contemplated by the parties for passing the title, or whether any was or not contemplated, it is very clear that it is not to be understood upon the terms of the agreement, as charged in the bill, that it was in their contemplation that the farm was to become the son's until the death of the father and the fulfillment of the terms upon which the proposition to give the farm was based as a condition precedent. According to the agreement charged, then, the title was to pass not till the death of the father, and possession was to be given only as it followed the title. If possession was given to the son earlier than he would be entitled to it by the agreement under a conveyance of the title, it must have been in virtue of some agreement not charged in the bill; unless the terms proposed as the consideration for the promise to give the farm are of a character to imply that possession of the farm must be given to the son in order to their fulfillment by him. Those terms are, that the son should *live with* the father, and take care of him and of his farm. All this could be performed without establishing the son in possession to the exclusion of the father, or jointly with him. To take care of a farm no more implies dominion and control over it as landlord or tenant in possession, than to take care of the father imports the authority of a guardian. In both cases the term, in the connection in which it is used, is to be considered as meaning to render services in taking care of the person and farm of the father as his servant and under his direction; and it would be an unreasonable construction to hold that the agreement charged implies that the father was thus to abandon the possession, for that is not necessary for the fulfillment of the conditions proposed. Assuming, then, that possession was delivered to the son, still it was not delivered in execution of the agreement charged, for there is nothing in that agreement which the delivery of the possession would tend to fulfill; and if delivered upon any other footing, although it might be in consequence or on

account of the agreement, it would not be part performance to take the case out of the statute.

Thus Kent, Ch., says, in *Kent* v. *Thompson*, 1 Johns. Ch. 146, unless the plaintiff has clearly established the contract as charged, and also part performance of the *same* contract, he has not entitled himself to the relief sought.

In *Harris* v. *Knickerbocker*, 5 Wend. 645, it is laid down that the contract admitted by the answer, or proved by the testimony, must correspond with that set forth in the bill, and the acts relied on as part performance must clearly appear to be done with a view to the performance of the contract.

These principles were recognized and approved in our own courts in the case of *Tilton* v. *Tilton*, 9 N. H. 385, in which *Wilcox*, J., says, when a plaintiff sets up a particular contract, and calls for its execution, upon being put to the proof of it he must establish it as he has described it, and unless he does establish the contract as charged, and also a part performance of the same contract, he is not entitled to the decree.

If, therefore, possession were delivered to the son in the lifetime of the father, it would be no such possession as would accompany or follow the full execution of the agreement as charged.

But on the supposition that the terms proposed as the condition upon which the farm was to be given to the son, are of a character to imply that possession was to be given to him in the life-time of the father, and that in fulfillment of this implied stipulation possession was so given, yet that would not bring the case within the principle recognized upon the authorities cited as the governing rule in such cases. By the act of delivering possession the complainant would not be placed in a situation which would be a fraud upon him without the full execution of the agreement, liable for rents or otherwise as a wrong-doer ; from which liability the complete execution of the agreement would have relieved him. He would be no more and no less a wrong-doer in exercising that possession, whether he should have or not have a title to the farm at the death of the father.

In the case of *Surcome* v. *Pininger*, 17 Eng. L. & Eq. Rep. 212, cited by the counsel for the complainant as an authority that here has been a sufficient part performance, under an agreement to convey, the possession was delivered as the possession accompanying and following a conveyance of the title. It was the common case of a vendor delivering possession as the possession accompanying the title, and was precisely that possession which would have been delivered, and was agreed to be delivered, under the agreement to convey. Unless the case were held to be out of the statute, the vendee would be left without answer to a suit for the rents and profits, or liable as wrong-doer in holding the possession. The full execution of the agreement, by conveying to him the title, would furnish such answer, and legalize the otherwise wrongful possession. That case falls clearly within the principle of fraud which is recognized as the ground of interference in decreeing the specific performance.

In the case now before us, the implied stipulation that the possession should be surrendered to the son in the life-time of the father, assuming that this is implied, would be completely fulfilled without a fulfillment of the other stipulation that the title should be conveyed at his death. The specific performance of the latter would in no way relieve the son from any fraud, or injury in the nature of a fraud, which, without that performance, would fall upon him by reason of the giving of the possession to him in fulfillment of the former. He would remain under the same liability, if any attached to him, on account of having the possession in the life-time of the father, whether he had title at his death or not.

These views derive confirmation from the principles recognized in numerous cases, establishing the doctrine that possession of the land contracted for is not to be deemed part performance, if it be obtained wrongfully, as if the vendee enter into the possession as a trespasser, not under the contract but in violation of it, or if it be obtained wholly independent of the contract, as if the vendee be tenant in possession under the vendor at the time of

the contract; for in such case his possession is properly referrible to the tenancy and not to the contract. Vide authorities cited, 2 Story Eq., sec. 763.

The conclusions to which these views lead are, that if possession was in fact delivered to the complainant, it was not done in part execution of the agreement charged in the bill, and that if it is to be considered as having been so delivered, nevertheless, it is not such an act of part performance as would place the complainant in a situation which would be a fraud upon him, unless the contract were fully performed.

Upon sound and approved principles the possession must be held to be insufficient as a part performance to take the case out of the statute.

The other acts set forth in the bill independent of the possession are clearly insufficient.

The facts that the complainant rendered services, and furnished support for the father, and made repairs upon the buildings, are not of a character to require that there should be a specific performance of the agreement in order that they should be adequately remunerated. The law provides a full and adequate remedy in the way of compensation in damages.

If one renders services for another in the hope of a legacy, and in sole reliance upon the testator's generosity, without any contract, express or implied, that he should receive compensation by will or otherwise, at the death of the testator, the party would probably be without remedy at law if the testator should disappoint his expectations, and fail to make the provision hoped for. But when it is manifest from the circumstances that it was understood by the parties that compensation was to be made by will or otherwise, and none is made, an action lies to recover the value of the services. *Martin* v. *Wrights, Admr.*, 13 Wend. 460 ; *Eaton* v. *Benton & als.*, 2 Hill. N. Y. 576 ; *Jacobson* v. *Le Grange*, 3 Johns. 199.

If, then, these expenses were incurred because they are implied in the terms proposed as the condition on which the farm was promised to the complainant, then were they incurred by him as

the consideration in whole or in part for that promise, and being of a character to be adequately measured and fully compensated by pecuniary damages, they can no more furnish a ground for taking the agreement out of the statute, than would the payment of the same amount of money as the purchase price of the farm.

A more difficult question might arise if expenditures, to a considerable amount, had been made by the complainant under the possession claimed by him to have been delivered, but which possession was not delivered in part execution of the agreement, and the expenditures had been not for repairs, but for improvements made solely for the benefit of the complainant in anticipation of the estate becoming his at the death of the father.

But such is not the state of facts, as claimed in the bill, nor as shown by the proof. The only expenditures made by the complainant during the period of twelve years, when he claims to have been in possession, appear from the evidence to have been about six dollars in 1839 ; twenty-eight dollars in 1843 ; to the amount of three days' work on the barn in 1847 ; and, as described by the deponent, Moses Yeaton, who testifies to the three days' work, " some small jobs afterwards :" and these all strictly for repairs as necessary to be done for the use of the then occupant as for the prospective benefit of the future owner, and amounting to an average of three dollars per year in needful repairs upon a house and barn alleged in the bill to be greatly out of repair when the complainant entered into possession of them. This state of facts furnishes no ground for straining the rules by which courts of equity are ordinarily governed, for the purpose of giving the party relief in equity instead of leaving him to his remedy at law.

There is, then, no ground upon which the agreement, as charged in the bill, if it is capable of proof as charged, can be held to be taken out of the operation of the statute of frauds, and the court are consequently precluded by the terms of the statute from hearing testimony to support this suit upon it.

*The bill is dismissed with costs.*