WILLIAM BARNS et al., Respondents, *v.* JOHN BARROW, Appellant.

Where, under a contract made by an individual member of a firm in his own name, by which he agrees to furnish another goods to be sold on commission, the goods are furnished by the firm, an action cannot be maintained by the firm upon a guaranty that the factor will account for the proceeds of his sales, in the absence of proof of knowledge on the part of the guarantor, at the time of executing the guaranty that the goods were to be furnished by the firm.

A guarantor has the right to prescribe the exact terms upon which he will enter into the obligation and to insist upon his discharge in case those terms are not observed.

*Alexander* v. *Barker* (2 C. & J., 134); *Cathoy* v. *Pennell* (10 B. & C., 671); *Garrett* v. *Handley* (3 B. & C., 463; S. C., 4 B. & C., 664) distinguished.

(Submitted May 14, 1874; decided September term, 1874.)

APPEAL from an order of the General Term of the Supreme Court in the fourth judicial department, reversing a judgment in favor of defendant, entered on the report of a referee.

This action was upon a guaranty.

On the 20th of October, 1869, Edward F. Barrow entered into a written agreement with the plaintiff John W. Barns, whereby Barns agreed to furnish Barrow flour and feed to be sold by the latter on commission, at prices to be designated by the former. Barrow was to account for the proceeds of sales, deducting his commissions. The defendant guaranteed, in writing, the performance of this agreement on the part of Edward F. Barrow. It appeared that the flour, etc., which was supplied under this agreement, did not belong to John W. Barns, but to the firm of John W. Barns & Co., of which firm plaintiffs were the individual members, and that there was a balance of $600.51 due said firm from E. F. Barrow at the commencement of the action. It did not appear that either E. F. Barrow or the defendant knew that the goods supplied belonged to the copartnership.

The referee held as a matter of law that the plaintiffs could not recover against the defendant on the contract of guaranty.

*Wm. J. Wallace* for the appellant. The obligation of a surety is to be strictly construed, and is not to be extended beyond its terms. (Burge on Suretyship, 40 ; 4 Taunt., 603 ; 3 East, 484 ; 5 M. & W., 580 ; *Dry* v. *Davy*, 2 Pro. and Div., 249 ; *Arlington* v. *Meyrick*, 2 Saund., 414 ; 3 Wils., 530 ; *Wright* v. *Russel*, 2 Black, 934 ; *Walsh* v. *Bailie*, 10 J. R., 180 ; *Robbins* v. *Bingham*, 4 id., 476 ; 5 Hill, 634 ; 2 Den., 375 ; 1 Bell's Com., 372 ; *London As. Co.* v. *Bold*, 6 Ad. & El. [N. S.], 514.)

*A. L. Johnson* for the respondents. The guaranty was founded upon a good consideration, having been executed at the same time with the original contract. (2 Pars. on Con. [5th ed.], 7 ; *Leonard* v. *Vreedenburg*, 8 J. R., 29 ; *Conkey* v. *Hopkins*, 17 id., 113 ; *Gardinier* v. *Hopkins*, 5 Wend., 2.)

The agreement, although made by John W. Barns in his own name as agent of the firm of which he was a partner, without the knowledge of the other parties, is the contract of the firm. (Story on Part., § 243; *Pulver* v. *Burk,* 56 Barb., 390.) The guaranty was a continuing guaranty and should receive the same liberal construction as any other contract. (*Mason* v. *Pritchard,* 12 East, 257; *Drummond* v. *Preston,* 12 Wheat., 515; *Douglass* v. *Reynolds,* 7 Pet., 113, 123; *Lawrence* v. *McCalmot,* 2 How., 426; *Bell* v. *Bruen,* 1 How. [U. S.], 169, 186; *Haight* v. *Brooks,* 10 Ad. & El., 309; *Dobbin* v. *Bradley,* 17 Wend., 422; *Hargreave* v. *Snell,* 6 Bing., 244; *Martin* v. *Wright,* 6 Ad. & El. [N. S.], 917; *Gates* v. *McKee,* 13 N. Y., 231.)

DWIGHT, C. The single question in this case is, whether, under a written contract of guaranty, purporting to be made with a particular person, a firm, of which that person is a member, can recover the value of goods supplied to the person whose solvency was guaranteed, there being no evidence that the guarantor was made acquainted with the fact that the goods were to be supplied by the firm.

On the face of this contract, it is plain that no one could act upon it, except the persons named in it. The plaintiffs maintain that they can go behind the apparent transaction and show that they supplied the goods instead of John W. Barns. This claim is not one between the person who received the consideration and the plaintiffs. Were they seeking to collect of Edward F. Barrow, the purchaser, it might be claimed that the case was simply one of an undisclosed principal in the law of agency; and that parol evidence might be offered to show that John W. Barns was acting for the firm. This is the principle of such cases as *Alexander* v. *Barker* (2 Cromp. & Jer., 134); *Cothay* v. *Fennell* (10 B. & C., 671), cited in the court below. In *Alexander* v. *Barker,* there was a loan of money direct to the defendant, which was supplied by the plaintiff in his own name, though it belonged to a firm of which he was a member. The court held that the firm

might recover, as it was their money. There was no element of guarantee in the case. In *Cothay* v. *Fennell,* three persons agreed to be jointly interested in the purchase of goods, which was, however, made in the name of one of them; it was held that all might recover for breach of contract.

The present case differs in an essential particular from those just cited. It is a case of pure guaranty; a contract which is said to be *strictissimi juris;* and one in which the guarantor is entitled to a full disclosure of every point which would be likely to bear upon his disposition to enter into it. The consideration of the contract does not enure to him, but to another. He assumes the burden of a contract without sharing in its benefits. He has a right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge in case those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself upon the technical objection, this is not my contract, *non in hæc fœdera veni.* Accordingly, in the present case, he may say : "I contracted with John W. Barns, and will not be liable for supplies furnished by a firm, though he may be a member of it."

The authorities, when carefully considered, sustain this conclusion. Mr. Burge, in his work on Suretyship (chap. 3), discusses this subject at length. He says : " The contract of suretyship is to be construed strictly ; that is, the obligation is not to be extended to any other subject, *to any other person,* or to any other period of time than is expressed, or necessarily included in it. It was in the power of the person accepting the surety to have expressed, and it is his own fault if he has not included the case to which he seeks to extend the liability of the surety " (p. 40). This last remark is peculiarly applicable to the case at bar, as Barns, with whom the defendant contracted, knew who the members of his firm were, and could readily have named them, if he had seen fit. In the Roman law, the rule now under consideration assumes the form of a maxim : "An agreement of guarantee made

with one person cannot be extended to another person."
Some of the English cases which turn upon this principle are :
*Lord Arlington* v. *Merricke* (2 Saund., 414) ; *Wright* v. *Russel* (2 W. Black., 934) ; *Myers* v. *Edge* (7 T. R., 254) ;
*Barker* v. *Parker* (1 id., 287) ; *Simson* v. *Cooke* (1 Bing., 452) ;
*Strange* v. *Lee* (3 East, 484) ; *Spies* v. *Houston* (4 Bligh
[N. S.], 515) ; *Dry* v. *Davy* (10 Ad. & Ell., 30). The rules
governing letters of credit depend upon the same doctrine.
The whole subject is well illustrated by the case of *Philip* v.
*Melville* (cited in Burge on Suretyship, p. 68). In that
case, Melville recommended one Yetts to Dusie for a supply
of spirits, and guaranteeing the payment. Dusie wrote on
the back of the letter of credit an assurance to C. & J.
Philip, plaintiffs, that, not having the article himself, he had
sent Yetts with the letter of credit, on which they might
rely. They having furnished the spirits sued Melville. The
court held, that a letter of credit addressed to a particular
person is limited to him, and that the writer must be held to
have granted it in reliance on his prudence and discretion in
acting upon it ; that such a letter contains no general power
to interpose the writer's credit, or transmit his guarantee ;
and that this is specially to be observed where the general
terms of the letter make the personal limitation the only
restraint on the responsibility of the writer. The same principle is stated in *Union Bank* v. *Coster* (3 N. Y., 203) ;
*Birckhead* v. *Brown* (5 Hill, 634 ; S. C., 2 Den., 375) ;
*Walsh* v. *Bailie* (10 J. R., 180) ; *Robbins* v. *Bingham* (4
id., 476) ; *Penoyer* v. *Watson* (16 id., 100). In *Walsh* v. *Bailie*, A. gave a letter of credit to B., addressed to C. in Albany,
requesting the latter to deliver goods to B. C. instead of
delivering the goods himself, gave B. a letter to D., in
Geneva, who supplied the goods. It was held that the
engagement of A. to C. did not make him answerable for
goods furnished by any other person, on the ground that a
surety is not answerable beyond the scope of his engagement.
In *Penoyer* v. *Watson*, the facts were, that a letter of credit,
in favor of A., was addressed to P. & Co. That firm having

dissolved their partnership, P. acted on the letter. It was held that the guarantor was not liable.

It is conceded that none of the cases cited cover the case at bar in its precise terms. The theory on which they proceed, however, embraces it. As stated by Spencer, J., in *Penoyer* v. *Watson*, the surety cannot be bound beyond the scope of his engagement. The sole question is: To what did he agree? And if he contracted with one person, as he had reason to suppose, no other person can be substituted in the place of the apparent contractee. On like grounds no person can be added to or subtracted from the apparent number. The *words* of the written instrument point out the person with whom he contracted and measure his liability, unless it be made to appear affirmatively, by legitimate evidence, that the guarantor intended to embrace others.

The court below, in holding the surety liable, laid stress on an extract from a section in Story on Partnership, the effect of which, we think, was misapprehended. The passage is as follows: " If a contract of guarantee should be entered into apparently with one partner, but in reality it should be intended for the indemnity of the firm, for advances to be made by the firm, an action might be maintained by all the partners, as upon a joint contract therewith, although the written papers containing the guarantee should be addressed to one partner, and he alone should conduct the negotiation;" citing *Garrett* v. *Handley* (3 B. & C., 463 ; S. C., 4 id., 664). It will be observed Justice Story makes it a part of his supposition that the guarantee is *intended* for the indemnity of the firm, though apparently entered into toward one person. In the case cited by him evidence was produced at the trial which established that the guarantee was intended to be given for the joint benefit of the firm and not for that of the member solely to whom it was addressed. This evidence of special facts took the case out of the general rule, which would have otherwise governed it.

The case should be stated with some particularity. An action was first brought by Garrett, alone, against Handley.

It appeared at the trial that the loan, on account of which the guarantee was given, did not belong to Garrett solely, but to himself in conjunction with two partners, and he was non-suited. A second action was brought by the partners, though the guarantee was addressed to Garrett alone. The plaintiffs, to show right of action, produced a correspondence between Bodenham, one of the partners, and the defendant, for the purpose of showing that the guarantee, though in terms given to Garrett, was intended for the benefit of the firm. On the part of the defendant it was urged, first, that the correspondence did not prove that the guarantee was intended for the benefit of the firm; and second, assuming that it did, still, that the action ought to have been brought in the name of Garrett, to whom the guarantee was in terms given. The court directed the case to stand over in order to read the correspondence. At a later day the judges said that they had perused the correspondence, and thought that it sufficiently appeared that the guarantee was intended for the benefit of the firm and not for Garrett alone, and that being so, they were of opinion that the action was properly brought in the name of the parties for whose benefit the contract was entered into. The reporter states the point of the decision to be, that an action may be maintained by the several partners of a firm, upon a guarantee given to one of them, if there be evidence that it was given for the benefit of all. The same principle was applied to the decision of *Bateman* v. *Phillips* (15 East, 272). In that case a letter of guarantee was addressed to an attorney, and parol evidence was offered to show that it was intended for his client. Lord ELLENBO-ROUGH said that the parol evidence did not go to extend the terms of the agreement in writing; it only went to show that the letter was addressed to him as the attorney for the plaintiff and not as the principal and creditor of the debtor. These cases show in the clearest manner that the mere addressing of a guarantee to one, in the absence of parol evidence of intention, will not permit another to recover upon it.

That this was the interpretation put upon these cases by Judge STORY is plainly shown by the language used by him in section 247 of the work already cited, where he remarks : " It never can be said with truth or justice that a guarantee or suretyship for advances to be made by A., B. & C. does properly extend to any advances made by A. or B., or by A., B. & D. ; and therefore the guarantor or surety may with all good faith and correctness say *non in hæc fœdera veni*," citing, with approval, *Strange* v. *Lee* (3 East, 484, 490). In that case the guarantee reciting that B. intended to open a bank account with C., D. & E., as his bankers, was conditioned for payment to *them* of all sums from time to time advanced to B. at the said banking-house. It was held that on C.'s death such obligation ceased, and did not cover future advances made after another partner was taken in. Lord ELLENBOROUGH said : " The court will no doubt construe the words of the obligation according to the intent of the parties, to be collected from them; but the question is what that intent was. The defendant's obligation is, to pay all sums due to *them*, on account of their advances to Blyth. Now, who are 'them' but the persons before named ?  *   *   *   The words will admit of no other meaning.  *   *   *   We are desired to construe our obligation to be answerable for money due to *them* (certain partners having been before named), to mean money due to any part of them ; a construction which would be contrary to the words of the instrument." (Pp. 490, 491.) The only case appearing to lend color to the plaintiff's claim is *Walton* v. *Dodson* (3 Car. & Payne, 162). The case is briefly reported at *nisi prius*, and was decided shortly after *Garrett* v. *Handley* (*supra*). It is probably not inconsistent with it, but if so must be disregarded.

In the case at bar the defendant agreed that Edward F. Barrow should account to John W. Barns for goods received, and should sell on commission for him, and be accountable for the proceeds, after deducting commissions to be allowed him by Barns. It is not possible, on any principle of con-

struction established by the commentators and the cases cited, to add to the name of John W. Barns those of William and Charles Barns, his copartners, it not being made to appear that the defendant knew, at the time of the execution of the contract, that it was entered into by John W. Barns, not for himself merely but also for his copartners.

The order of the General Term should be reversed and the judgment entered upon the report of the referee should be affirmed, with costs.

All concur.

Order reversed, and judgment accordingly.