By the Court.—Speir, J.
The action is brought upon the guarantee executed by the defendant after the expiration of the term of credit provided for by the agreement. It is in evidence that after the above credit had expired the plaintiff commenced an action, and recovered a judgment against Heron for the same amount as was recovered in this action, and notice of pendency of that action was given to the defendant herein, who was a witness at the trial. The guaranty in the case is absolute, and did not require any preliminary demand of payment upon the principal debtor, and notice of non-payment. Hor does it appear that the omission of such demand and notice has been the occasion of any injury to the defendant. The defendant made no stipulation for notice to him as guarantor in any event. The points made in these respects by defendant’s counsel may therefore be disregarded.
The terms of the contract of guaranty must be strictly complied with, or the guarantor will not be bound, and any subsequent alteration at all materially affecting the principal contract made without his consent discharges him.
The cases go to the extent of holding that although sucli variation may be to the advantage of the surety, yet it releases such surety from all liability on his contract. It is not a question whether he is harmed by a deviation to which he has not assented (Barnes v. Barrow, 61 N. Y. 39). He has the right to prescribe *520 the exact terms upon, which he will enter into the obligation, and in case of variance to avail himself of the technical objection that it is not his contract.
The defendant claims that there was a revocation of the agreement between the plaintiff and Heron. That by it the deck-load, consisting of about ten of twelve thousand eocoanuts, was excluded from the operation of the contract. That under the contract as originally made, the plaintiff was bound to deliver, and Heron was bound to receive, the whole of the cargo, including the deck-load, and that subsequently it was agreed without the defendant’s assent that Heron need not take the deck-load. The learned judge, admitttéd ,the legal proposition, and charged the jury that, if this was so, such subsequent agreement amounted to an alteration of the contract guaranteed, and the guarantor was discharged.
The plaintiff introduced certain evidence tending to show a custom in the city of Hew York, and on the exchange, by which in the fruit trade deck-load was not included as part cargo. It is clear, if such custom can be maintained there would be no variation in the contract between the plaintiff and Heron. By excluding the deck-load from the contract, the legal consequences flowing from the foregoing proposition would be avoided.
The introduction of the evidence of custom was opposed upon the ground that the term cargo is neither a technical or professional term, or a word having any significance in any art, business, trade or calling different from its ordinary accepted use. In short, that the word has a definite well-known meaning.
The custom should be reasonable, as growing out of the exigencies and conveniences of commerce and trade. The point is, are the words or phrases of a written contract to be understood in that sense which they have acquired in the trade with regard to which they are *521 used. In Myers v. Earle (3 Q. B. 20, November, 1860, 30 L. J. 9), the court say, “I do not think that in order to introduce this extrinsic evidence, it is necessary that the phrase itself should be at all on the face of it ambiguous.” In Houghton v. Gillut (7 Car. & P. 701), the word “ cargo” received a mercantile construction, as applicable to that case. Nuts, like most articles in the fruit trade, are exposed to the vicissitudes of weather, and cannot be so well preserved as when conveyed under the deck. In this case Herron refused to accept the deck-load. The court instructed the jury that, inasmuch as there was a conflict of evidence on the question whether such a custom prevailed, it was for them to determine the fact.
The defendant offered to show by an expert witness, that he estimated the number of culls in a part of the lot which was to be sent to auction, and that he could estimate such percentage with accuracy. This was properly excluded. It did not follow that the percentage on the whole cargo could be ascertained by a calculation of the percentage on a portion of it. It was shown that in that part of the cargo received by Herron there were 17,050 culls, and' there were only 6,364 left in the whole remaining part which were sold at auction. In other words, 238,363 nuts were sold and delivered, and the culls, as stated in the receipts, were 23,414, which is less than ten per cent.
It is claimed by the defendant that the cocoanuts, excluding rots and cracks, were not prime and merchantable. The contract of warranty was “ $40 a thousand as they run, throwing out cracks and rots only, the cargo to be of prime, merchantable quality, culls not to exceed ten per cent.” It is to be observed that this is a warranty with a qualification. The important fact to be determined relates to the percentage of the culls on the whole cargo. It has already been shown that they did not contain more than ten per cent. *522 Eneas and Herron, by agreement, each appointed a counter to select and throw out all cracks and rots, in order that the nuts which they both selected as sound should be delivered to Herron. They were duly receipted for until he refused to receive any more. This was an acceptance of the goods by Herron, so far as cracks and rots were concerned. Under all the facts and circumstances, and in view of all the evidence, the question was left for the jury to determine whether there was a breach of the warranty as to the prime and merchantable quality contemplated by the principal contract.
The requests to charge are embraced in the motion to dismiss, except two, which were charged by the court.
The judgment and order must be affirmed with costs.
Sedgwick, J., concurred.