## Case No. 14,743.

UNITED STATES v. CASE et al.

[25 Int. Rev. Rec. 56.]

District Court, N. D. New York. 1879.

PRINCIPAL AND SURETY — MODIFICATION OF CONTRACT—RELEASE OF SURETY.

A surety is released from his obligations under a contract guaranteed by him where any modification is made in that contract without his consent, even though it be by mutual agreement between the principals, and in a particular not deemed essential by either of them.

Richard Crowley, for the United States.

Lansing & Lyman (Wm. C. Ruger, of counsel), for defendants.

WALLACE, District Judge. The defendants are sued upon a guaranty whereby they undertook that one Van Wagenen, who was a bidder for a contract to furnish stone about to be let by the plaintiff, would, in case the contract was awarded to him, enter into the contract with sufficient sureties within ten days after the acceptance of his bid to furnish the materials in conformity to the terms of the advertisement under which the bid was made, and in case of his default the defendants agreed to make good the difference between the offer of Van Wagenen and the next lowest bidder, or the person to whom the contract might be awarded. The contract was awarded to Van Wagenen. He failed to execute it, and it was then awarded to another bidder; the difference in the bids being $7,290, which sum this action is brought to recover.

The facts material to the case are these: Under the authority of the acts of congress in that behalf the government of the United States were improving the St. Mary's Falls Canal, the work being under the immediate supervision of Major Weitzel as engineer in charge, and a contract was about to be let for furnishing the stone to be used in the improvement, pursuant to the terms of an advertisement. A copy of the advertisement, together with the specifications, a form of proposal and form of guaranty, all in print, and all annexed together, were forwarded to parties proposing to bid. The specifications, among other things, provide that the stone to be furnished shall be "of some good quality, approved by the engineer in charge," and require the bidder "to send to the office of the engineer, free of charge, a sample of the kind of stone proposed to be delivered," of a designated size, "one face left in the rough and the other faces picked, sawed or hammered to show how the stone will work." The proposal reads, that the bidder will furnish stone agreeably to the terms of the specification, which shall be "of a quality shown by an accompanying sample." Among the bids received by the engineer was one from Van Wagenen. The blanks left in the bids for dates, names, and prices, and those in the guaranty for the names and places of residences of the guarantors, were filled out, the proposal being signed by Van Wagenen and the guaranty by the defendants, while endorsed upon the paper following the guaranty was a notice addressed to the engineer, and signed by Van Wagenen, as follows: "I refer you for samples of stone to be furnished under this bid to samples sent by me to your office at the time of former bid by me on same work, and will agree to furnish like stone or such stone as the engineer in charge shall require." This notice was not upon the papers when defendants signed the guaranty, nor was it in any way known or assented to by them. By the terms of the advertisement, bids were to be received up to three o'clock p. m. of March 31st. March 31st the engineer telegraphed to Van Wagenen, "What kind of stone and from which quarries do you propose to furnish under your bid of this day?" To which on the same day Van Wagenen answered by telegram: "Limestone from the following quarries: Marblehead and Kelly's Island, Ohio; Chaumont, New York; Queenstown, Ontario." The next day the engineer telegraphed to Van Wagenen: "If contract is awarded, you must furnish Marblehead or Kelly's Island stone. Chaumont will not be accepted; Queenstown is prohibited by law." It would seem that Van Wagenen assented to these conditions, and on April 26th the engineer notified Van Wagenen that his bid was ac-

cepted and the contract awarded. May 3d Van Wagenen notified the engineer that he could not get the stone required. No contract was tendered to Van Wagenen for execution, and the contract was let to another bidder.

Upon these facts it is insisted by the defendants that they are not liable because the contract proposed by the engineer and which Van Wagenen failed to enter into was not the contract, the execution of which the defendants had guaranteed, but one by which a different kind of stone from that originally provided for was to be substituted. If the contract proposed for execution to Van Wagenen differed in any material particular from that called for by the advertisement, specifications and proposal, it must be held that defendants are not liable upon their obligation; and this result will follow although the contract was modified by the mutual consent of Van Wagenen and the engineer in charge, and in a particular which was not deemed substantial by either of them. The defendants are sureties, who are bound to the extent and in the manner and under the circumstances pointed out in their obligation, and no further. It is not sufficient that a surety may sustain no injury by a change in the contract he has guaranteed. Even if the change will inure to his benefit, he is still absolved. He has a right to stand upon the strict terms of his contract, and any material variation made without his assent is fatal. These propositions are so well settled that no citation of authorities is required to support them. Cases peculiarly in point, however, are Barns v. Barrow, 61 N. Y. 39; Whitcher v. Hall. 5 Barn. & C. 269; Grant v. Smith. 46 N. Y. 93; U. S. v. Corwine [Case No. 14,871]; U. S. v. Tillotson [Id. 16,524].

Applying these rules, it will first be necessary to ascertain what contract the defendants undertook Van Wagenen should enter into, and, second, whether the contract proposed for his execution and which he failed to enter into varied in any material particular from that originally provided for. Reading the advertisement. specification and proposal together, the fair interpretation of their language is that a contract shall be executed to furnish stone of a description designated by a sample which is to accompany the proposal. It is not contemplated that the sample shall be annexed to the proposal; the sample need not be in existence when the proposal is signed; it suffices if the sample accompany the proposal in any manner which will enable it to be identified when the bids are opened. so that the engineer may pass judgment. upon it and compare it with the samples of other bidders The guarantors cannot insist that they undertook that Van Wagenen would enter into a contract to furnish stone like a sample existing when their guaranty was signed. They saw fit to sanction a proposal which permitted the bidder to build

them by any sample he might choose to forward. Inasmuch as at any time before the period for receiving proposals might expire the proposal could be withdrawn and delivered again with a new sample, any sample finally delivered with the proposal would be the sample accompanying the proposal. On the other hand. the specifications and proposal cannot be construed to authorize a contract for stone of any description required by the engineer. While one clause in the specifications states that the stone "shall be of good quality, and subject to the approval of the engineer," this clause is controlled by that one relative to the sample, and, read together, the meaning is manifest that the bidder is to furnish stone according to the sample, but unless it is of good quality it may be rejected by the engineer.

The original contract having been ascertained, it remains to inquire whether the one proposed for execution was the same or a different contract. As appears by the notice endorsed upon the proposal of Van Wagenen he designated as the sample of stone to be contracted for a sample which he had theretofore delivered to the engineer. He stated also in this notice that he would contract to furnish any other stone the engineer might desire. If this notice had been brought to the attention of the defendants prior to their signing the guaranty, it would seem clear that they intended to authorize Van Wagenen to contract to furnish such stone as he might select at the time of signing the contract. But. as the proof stands, the notice cannot be regarded as part of the contract sanctioned by these defendants. The effect of the notice, therefore, was only to make the sample of stone which Van Wagenen had theretofore delivered the sample accompanying the proposal.

It does not distinctly appear whether the telegram from the engineer to Van Wagenen inquiring what kind of stone the latter intended to furnish under his bid, or the answer of Van Wagenen specifying the kind of stone and the quarries from which it would be obtained, were sent before or after the bids were opened. It seems they were sent on the day for opening the bids, and nothing more is shown But. however the fact may have been. is not important in my view of the case. because it was not until the next day that Van Wagenen was notified that if the contract was awarded to him, stone from three of the quarries he had specified would not be accepted. and that stone from two specified quarries must be furnished by him. This was a distinct notification that the contract would only be awarded him on the condition that he should furnish stone from one or both of two quarries. Assuming that the sample which he had delivered to the engineer could have been furnished from any one or from all of the five quarries mentioned in the telegram of the day before: and assuming that this telegram was sent by

him and received by the engineer prior to the opening of the bids, nevertheless a condition was required which was not contemplated by the bid. It was a condition the tendency of which necessarily was to restrict his sources of supply and which because of this might render it more difficult or less profitable for him to undertake the performance of the contract. It is true he did not so regard it, and was satisfied to accede. It does not follow, however, that the defendants would have assented to the change, and in the absence of any evidence that they did assent it must be held that the contract proposed for execution was not the one which defendants guaranteed Van Wagenen should execute.

Stated briefly, the result of the communications between Van Wagenen and the engineer was that the latter should enter into a contract to furnish stone from the Marblehead or Kelly's Island quarry, while the contract which defendants were responsible for was one to furnish stone like a sample designated at or before the opening of the bids. Either Van Wagenen had designated the article by a sample at the time the bids were opened, or he had not. If he had, the contract tendered for his execution should have called for stone like the sample and without any restrictive conditions relative to the place from which it should be obtained. If he had not designated the articles, the undertaking of the defendants was inoperative because one of the conditions which entered into it had not been fulfilled, and what was subsequently agreed upon between Van Wagenen and the engineer was a new contract and not that which defendants had guaranteed.

Implications against the good faith of Van Wagenen, and which tend to show that he never intended to enter into the contract pursuant to his bid, arise from the evidence in the case. Whether these are well founded or not is not material. They do not derogate from the right of the defendants to insist upon the strict letter of their obligations. The recovery cannot be sustained and a new trial is granted.