Supreme Court, Appellate Term, January, 1917. [Vol. 98.

the sum of $4,256, taxes assessed upon the personal property of the decedent prior to her death. The personal property which the decedent owned in this state at the time of her death is not subject to a transfer tax in this state. Any taxes assessed by the state or municipality on such personalty constitutes an indebtedness which is payable out of the personalty.

The executor also contends that the appraiser erred in refusing to deduct executor's commissions upon the real estate. The decedent devised her real estate in this state to her children. She also gave to her executor a power of sale. The power. was not exercised at the time this proceeding was before the appraiser, and it may never be necessary for the executor to exercise it. Until such power of sale is actually exercised no commissions for the sale of such real estate can be allowed to the executors in a transfer tax proceeding. *Matter of Browning,* 95 Misc. Rep. 459.

The order fixing tax will be modified by making the taxable interest of Julian McCarthy Steele $57,397.35.

Order modified.

DAVID MEYER, BARNETT MEYER and LOUIS MEYER, Copartners Trading as DAVID MEYER & BROS., Respondents, *v.* LOUIS KAHNWEILER, Appellant.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Guaranty — of payment for goods sold and delivered to third person — partnership — evidence — pleading — actions — appeal.

A partnership may recover on a guaranty of payment for goods sold and delivered to a third person, given to one member of the firm, if there is evidence that the guaranty was for its benefit.

Where, in an action by a copartnership upon defendant's written guaranty of payment for goods sold and delivered to a company of which he was the president, there is testimony from which the jury could have legitimately inferred and found that defendant knew, when he told the bookkeeper of the company to send the guaranty to a member of the plaintiff firm, that it was for the benefit of the partnership which had previously sold goods to the company, and it further appears that when the one to whom the guaranty was sent called upon defendant with reference thereto he told him that " we " would not sell the company more merchandise unless defendant would personally guarantee the payment, it was error to dismiss the complaint on the ground that plaintiff was not entitled to recover on the guaranty.

But where the complaint merely alleged the giving of the guaranty to the individual member of the firm, a sale of goods by him and an assignment of his cause of action, and he unqualifiedly testifies that the goods were sold and delivered by the firm, plaintiffs are not entitled to recover, and the judgment will be reversed, but without prejudice to the right of plaintiffs to institute an independent action upon the guaranty.

BIJUR, J., dissents.

Where as to a second cause of action alleged in the complaint and based upon defendant's alleged oral promise to pay there is a disputed question of fact, the verdict of the jury in favor of plaintiffs will not be disturbed.

CROSS appeals from judgments of the Municipal Court of the city of New York, borough of Manhattan, second district.

Maurice L. Shaine, for appellant.

Jacob I. Berman, for respondents.

GUY, J. The plaintiffs sued the defendant for goods sold and delivered to a third party, the first cause of action being based upon a written guaranty of payment, and the second upon an alleged verbal promise to pay.

Upon the trial the jury found a verdict in favor of the plaintiffs upon the second cause of action, and from the judgment entered thereon the defendant appeals. Both parties having moved for the direction of a verdict upon the first cause of action, the court below directed a verdict in favor of the defendant, and from the judgment entered upon that verdict the plaintiffs appeal. Upon the second cause of action there was a disputed question of fact, and the verdict of the jury should not be disturbed. As to the first cause of action the material facts are not substantially disputed. The plaintiffs constitute a copartnership composed of three members.

They were engaged in selling paints and painters' supplies. Prior to March 17, 1916, they had sold and delivered goods to a concern of which the defendant was president and a stockholder, known as the Liberty Doll Company, and of which company one DiGioia was the general manager. David Meyer, one of the plaintiffs, testified that he was called to the office of DiGioia and that DiGioia told him that he wanted more merchandise; that he told DiGioia that " he would not sell him any more merchandise, unless Mr. Kahnweiler would guarantee the merchandise which I sell him." After some conversation, Meyer went and interviewed the defendant and was told by him that he would guarantee the account up to $200. On March 18, 1916, an instrument in writing, upon which the plaintiffs' first cause of action was based, was sent to Meyer, and goods to the amount of $200 were subsequently sent to the doll company.

Defendant's version of the transaction does not differ materially from that of Meyer. He says that he does not remember whether Meyer called on him the day DiGioia ordered the first bill of goods, but says that he went to the office of the doll company

late in the afternoon or evening of that day and was there told that the doll company wanted some more merchandise and that " they wanted a guaranty and that the bookkeeper had sent a guaranty to David Meyer Co." He does not claim that the guaranty was sent without his authorization, but says: " I think I might have told the bookkeeper to send a guaranty to David Meyer." He also says that he understood that " they " (meaning the doll company) wanted about $200 worth of merchandise right away.

The guaranty in question reads as follows:

" NEW YORK, *March* 18*th* 1916.

" DAVID MEYER,

" 6th First Ave New York City:

" DEAR SIR.— In reference to the merchandise ordered by our DiGioia of Liberty Doll Company, Mr Louis Kahnweiler of David Kahnweiler Sons of 260 Front street will guaranty the account to $200.

" Trusting that this will be satisfactory, I am,

" Yours very truly,

" (Signed)    LOUIS KAHNWEILER."

The learned trial justice based his disposition of the case upon the authority of the case of *Barns* v. *Barrow,* 61 N. Y. 39. The decision in that case is based upon the case of *Grant* v. *Naylor,* 4 Cranch, 224. In these cases the rule is laid down that in a case of pure guaranty, the guarantor assumes the burden of the account without sharing the benefits, that it is strictly to be construed and not to be extended to any other person, and in the *Barns* case the court said " that the defendant could say, ' I contracted with John W. Barns, and will not be liable for supplies furnished by a firm, though he may be a member of it.' "

The exception to this strict rule is pointed out in

this case, and the case of *Garrett* v. *Handley,* 4 B. & C. 664, is carefully considered and approved. In the *Garrett* case the court held " that an action may be maintained by the several partners of a firm, upon a guarantee given one of them, if there be evidence that it was given for the benefit of all."

In *Beakes* v. *Da Cunha,* 126 N. Y. 293, the same exception was referred to, and the court there said, speaking of the facts in that case: " There was evidence sufficient, although quite slight, to show that the defendant's testator, at the time he executed the guaranty, knew that plaintiffs were copartners doing business under the firm name of George E. Beakes, and that he intended that the guaranty should be for their benefit."

In the case at bar there is testimony, although " slight," from which the jury could have legitimately inferred and found that the defendant knew when he told the bookkeeper of the doll company to send the guaranty to David Meyer that it was for the benefit of the firm of David Meyer & Bros. The defendant was the president of the doll company. That company had, for some time previous to March 17, 1916, been obtaining merchandise from the plaintiffs of the same kind purchased under the order of March 18, 1916, and *subsequently* the defendant presumably knew of this fact. It is undisputed that when David Meyer called upon defendant in reference to obtaining the guaranty, he told defendant that " we " would not sell the doll company more merchandise unless defendant would personally guarantee the payment. The expression " we " clearly referred to the plaintiffs and that evening when the defendant went to the office of the doll company he was told that the company wanted some more merchandise and that the bookkeeper had sent a guaranty to " David Meyer

Company,'' thus showing that the defendant knew for whose benefit the guaranty was given.

The trial court, therefore, erred in dismissing the first cause of action upon the authority of *Barns* v. *Barrow, supra.*

There is, however, another feature of the case that is fatal to a recovery thereon in this action. The complaint alleges that the guaranty was given to David Meyer, that the merchandise was ordered of Meyer, and that the cause of action of Meyer was assigned to the plaintiffs. The only right of the plaintiffs to recover is thus based upon the assignment of Meyer's cause of action. It was not alleged or even suggested in the complaint that the guaranty was for the benefit of the firm or that the firm sold or delivered the goods. Nevertheless, Meyer testified unqualifiedly that the goods were sold and delivered by the firm. The recovery must follow the pleadings and the proof, and the plaintiffs cannot in this action be permitted to recover as the persons intended to be benefited by the guaranty and for goods sold and delivered by them, where the complaint merely alleges a guaranty to an individual member of the firm, a sale by him and an assignment of his cause of action. To recover, it will be necessary for the plaintiffs to sue in their own right as the persons for whose benefit the guaranty was, to the knowledge of the defendant, intended. It follows that the judgment must be affirmed, without costs, without prejudice, however, to the right of the plaintiffs to institute an independent action upon the guaranty.

SHEARN, J., concurs.

BIJUR, J. (concurring in part). I concur as to the second cause of action because whatever error may

have been committed as to a part of the claim amounting to twelve dollars is cured by the verdict of the jury which excluded from its award that amount.

As to the first cause of action, however, I dissent from the view of my colleagues. The learned judge below has held that plaintiffs, a copartnership, cannot recover on a guaranty addressed to an individual who happens to be one of the members of the firm. This ruling he bases on *Barns* v. *Barrow,* 61 N. Y. 39, which in turn cites a decision of Chief Justice Marshall in *Grant* v. *Naylor,* 4 Cranch, 224. Defendants-appellants urge that these cases have been distinguished in *Beakes* v. *DaCunha,* 126 N. Y. 293, and again in *Knit Goods Exchange, Inc.,* v. *Halpern,* 81 Misc. Rep. 218, on the principle that where it appears by parol testimony that the guarantor, although addressing one person, really referred to another party, and intended the guaranty to run to the latter, he will be held accordingly. But neither the *Beakes* case nor the *Knit Goods* case goes that far. In the latter there was a misnomer, practically equivalent to a clerical error. The *Beakes* case is explained as one involving an ambiguity (always open to explanation) in the opinion of the Appellate Division in *Duffy Co.* v. *Todebush,* 216 N. Y. 297, affg. 157 App. Div. 688, which in turn reversed the Appellate Term in 139 N. Y. Supp. 112. The opinion of the Court of Appeals in the *Duffy* case expressly disclaims any answer to the question whether the rule enunciated by Judge Marshall had ever been varied at all.

I think, therefore, that plaintiffs cannot successfully maintain this action. Moreover, even if plaintiffs could succeed upon proof that the defendant intended the guaranty to be for the benefit of the firm, rather than of the individual to whom it is addressed, I cannot find in this record anything more than the

Misc.]   Supreme Court, Appellate Term, January, 1917.

proverbial " scintilla " of evidence to support a find-
ing to that effect, and such finding would, therefore, be
unwarranted.  *Matter of Case,* 214 N. Y. 199, 203, 204.
Although defendant was president of the doll company,
he testifies affirmatively, and without contradiction,
that he " took no active charge.   The place was in
charge of Mr. DiGioia." Any inference, therefore, that
he was familiar with the business of the doll company
because he was its president is thus disproved.   Plain-
tiff testifies : " I had a personal conversation with Mr.
Cohen while at his office, and told him that I wouldn't
deliver any more merchandise, etc., unless he person-
ally would guarantee the account."   Later he says :
" He (defendant) did send *me* the guarantee."   When
defendant is interrogated as to the circumstances
under which the guaranty was given, he says : " *Mr.
Meyer* wouldn't sell liberty (Doll Company)."   He
also says in reply to the question of the court : " ' Was
it (the guaranty) sent without your authority? ' ' I
think I might have told the bookkeeper to send a
guarantee to *David Meyer.*' "

In face of all this evidence I am of opinion that we
cannot give such weight to a single answer of the
defendant, which by the way, is fairly unintelligible,
as to consider it proof that defendant intended the
guaranty to be for the benefit of the firm.   This
answer was given on his direct examination, and was
as follows : " Q. When you got there [namely at the
office of the doll company] did they inform you that
they had sent a paper to David Meyer & Sons?   A.
They wrote about wanting some glue — some mer-
chandise — and wanted guarantee.  I think the book-
keeper sent a guarantee to David Meyer Company."

In my opinion, therefore, the judgment was proper
and should be affirmed as rendered.

Judgment affirmed.