# BISHOP PRESS COMPANY, Respondent, v. FRANK LOWE, Appellant.

### Kansas City Court of Appeals, March 14, 1919.

1. **GUARANTOR: Fictitious Party: Knowledge.** A party contracted in writing that he would print and furnish to the "New Empress Advertising Company" a certain number of "program covers" for a certain price. A third person guaranteed in writing that the "New Empress Advertising Company" would perform its contract. In an action against the guarantor the evidence showed that there was no "New Empress Advertising Company" and that the real party was the "New Empress Company." It was *held* that if the guarantor knew when he executed the guaranty that the former was a fictitious name used by the latter he was liable, but if he did not know it, he was not liable.

2. ———: ———: ———. If one contracts with a real person, the latter using a fictitious name, and a third party, without knowledge of that fact, guarantees in writing that the fictitious person will perform the contract, he will not be liable on such guaranty for the failure of the real party to perform.

3. ———: ———: ———. If one contracts with a real person who uses a fictitious name, and a third person, knowing the real person is using a fictitious name, guarantees in writing that the fictitious person will perform the contract, he is liable for the failure of the real party, since he must have intended to be so bound.

4. **STATUTE OF FRAUDS: Guaranty: Fictitious Party.** There is high authority for the proposition that if a guarantor who guarantees in writing that A will perform his contract, he cannot, under the Statute of Frauds, he held for the failure of B to perform, though it be offered to show that A and B are one and the same person. This is put upon the ground that by the Statute of Frauds the contract must be in writing and when such writing is unambiguous, its terms cannot be varied by parol evidence. But the better rule seems to be that the real person may be shown not as varying the contract, but merely showing that an additional undisclosed person is a party to it.

5. **GUARANTOR: Payment on Delivery: Discharge.** A plaintiff contracted with a certain company that he would print and furnish to it a certain number of "program covers" at a certain price to be paid on delivery by plaintiff. A third person guaranteed that

the company would perform its contract. The plaintiff delivered a part of the covers without collecting the price, and it was *held* that the guarantor was discharged to that extent.

Appeal from Jackson Circuit Court.—*Hon Clarence A. Burney,* Judge.

REVERSED AND REMANDED.

*Henry L. Jost* for appellant.

*Sebree, Conrad & Sebree* for respondent.

ELLISON, P. J.—Plaintiff's action is based on a contract of guaranty and it obtained judgment against the defendant guarantor in the trial court.

It appears that plaintiff contracted with the "New Empress Advertising Company" that it should furnish paper and material for 250,000 "program covers" and print them in a workmanlike manner for the New Empress Advertising Company which company was to pay plaintiff $1000, therefor. It further appears that defendant entered into the following contract of guaranty with plaintiff, viz, "I hereby guarantee the fulfillment of this contract by the New Empress Advertising Company and the payment of all money due the Bishop Press from them under this contract." There was evidence tending to prove that plaintiff furnished the paper (at least in great part) and printed the covers and delivered them to the "New Empress Company," and that it has not been paid the price it was to receive from the "New Empress Advertising Company." This action, as above stated, was thereupon instituted against defendant as guarantor.

The case presents the anomaly of the plaintiff making the contract (the payment of which defendant guaranteed) with a fictitious party. That is, it appears that the contract guaranteed was made between plaintiff and the "New Empress *Advertising* Company," whereas there is no such company, the real party being the corporation "New Empress Company." But plain-

tiff insists that the latter real company had a right to
contract with plaintiff in the fictitious name, citing in
support of the proposition Sparks v. The Dispatch
Trans. Co., 104 Mo. 531, 548; Radley v. Meeks, 178 Mo.
App. 238 and Bartlett v. Tucker, 104 Mass. 339. Those
cases bear out plaintiff's position. But where it is
sought to establish the contract against the real party,
the pleading should show the ground for so doing by
proper averment. It was so shown by the petition in
each of the cases cited; while in this case there is
nothing in the pleading to indicate that the "New Em-
press Advertising Company" was not the real party
contracting with plaintiff. That left the case stand as
stated in the petition and when it came to the proof a
different state of facts appeared, thus constituting a
variance. But we are of the opinion that this ought
not to cause a reversal of the judgment outright, since
plaintiff may amend by setting up the facts.

In this way an important question arises. Is a
guarantor liable to the creditor when the party named
as the principal debtor is a fictitious person—a real
person having used a fictitious name? Stated different-
ly, A and B, enter into a contract the latter using a
fictitious name, and C, guarantees that the fictitious
party will perform the contract, is C liable to A on the
guaranty? Leaving out of view the question whether
C knew that B, was the real party, using a fictitious
name, we think he would not. For as stated by defend-
ant, a guaranty is a collateral undertaking and it is
essential to its existence that here should be some one
liable as prncipal and if there is no valid claim against
a principal there is no existing contract of guaranty.
[Saving Bank v. Strother, 22 S. Car. 552, 556.]

In Barns v. Barrow, 61 N. Y. 39, the guaranty was
to a particular person and a firm, of which such per-
son was a member, undertook to recover on the guaranty
and it was held there was no liability. The court said:
"It is a case of pure guaranty; a contract which is
said to be *strictissimi juris;* and one in which the
guarantor is entitled to a full disclosure of every point

which would be likely to bear upon his disposition to enter into it. The consideration of the contract does not enure to him, but to another. He assumes the burden of a contract without sharing in its benefits. He has a right to prescribe the exact terms upon which he will enter into the obligation, and to insist on his discharge in case those terms are not observed. It is not a question whether he is harmed by a deviation to which he has not assented. He may plant himself upon the technical objection, this is not my contract, *non in hacc foedera veni.* Accordingly, in the present case, he may say: I contracted with John W. Barns, and will not be liable for supplies furnished by a firm, though he may be a member of it.'" Further on the court said that the sole question is: "To what did he (the guarantor) agree? And if he contracted with one person, as he had reason to suppose, no other person can be substituted in the place of the apparent contractee. On like grounds no person can be added to or subtracted from the apparent number. The words of the written instrument point out the person with whom he contracted and measure his liability." Again the court said: "It is not possible, on any principal of construction established by the commentators and the cases cited, to add to the name of John W. Barns those of William and Charles Barns, his copartners."

In Lamm & Co. v. Colcord, 22 Oklahoma, 493, a guarantor guaranteed against the default of O. C. Scoresby and credit was extended to the Scoresby Tailoring Company and there being no proof that Scoresby solely comprised the Tailoring Company it was held that the guarantor was not liable for the default of such Company. At page 500 of the report the court said that 'the guarantor agreed to answer for the default of O. C. Scoresby. The record shows that upon this instrument of guaranty the goods were furnished the Scoresby Taloring Company. There is no presumption that they were one and the same. A guarantor has the right to prescribe the exact terms upon which he

will enter into the obligation, and to insist upon a discharge in case those terms are not observed.''

In Grant v. Naylor, 4 Cranch, 224, it was ruled, in an opinion by Chief Justice MARSHALL, that a guarantor's letter of guaranty addressed by mistake to John and Joseph Naylor but, intended for, and delivered to, John and Jeremiah Naylor, who furnished merchandise to the principal debtor, would not support an action by John and Jeremiah against the guarantor.

In Allison v. Rutledge, 5 Yerg. (Tenn.), 193, the guaranty was addressed to John Allison and acted upon by John and Joseph Allison, it was decided that the guarantor could not be held.

In McGovney v. State of Ohio, 20 Ohio, 93, it was held that a bond describing a testator as James L. Findley could not be made applicable to *Joseph* L. Findley.

In Lyon & Co. v. Plum, 75 N. J. L., 883, it was held that a guaranty to a named partnership, could not apply when a new member ws added or an old one taken away.

In Jordan Marsh & Co. v. Beals, 201 Mass. 163, the decision was that a guaranty to a partnership for the purchases of the principal debtor, could not be enforced by a corporation of the same name which took over its assets and liabilities, composed of the same persons who made up the partnership and carried on the same business at the same place. And the same was decided in Saunders Co. v. Ducker, 116 Md. 474. Holdings of similar character are found in Smith v. Montgomery, 3 Texas, 199; King v. Batterson, 13 R. I. 117, 120; Penoyer v. Watson, 16 John, 100 and Crane Co. v. Specht, 39 Neb. 123.

But if the guarantor knew that a fictitious person was named for the real party as the principal debtor, we think the liability of a guarantor would attach. For we have already seen that a contract in the name of a fictitious person may be enforced against the real party using the fictitious name. And that being true, we think such a contract should be capable of being guaranteed.

Knowledge by the guarantor that the real principal debtor has used a fictitious name shows he could only have made the guaranty with the intention that it should apply to the real person. This qualification of the rule is found running through Barns v. Barrow, supra, where it is said that, "The words of a written instrument point out the person with whom he (the guarantor) contracted and measure his liability, unless it be made to appear affirmatively, by legitimate evidence, that the guarantor intended to embrace others." Again the court said that the cases show in the clearest manner "that the mere addressing of a guarantee to one, in the absence of parol evidence of intention, will not permit another to recover upon it." The same may be said of Lamm & Co. v. Colcord, Lyon & Co. v. Plum and Saunders & Co. v. Duckers, supra.

It, however, must be conceded that there is the highest authority for the position that the matter of the intention of the guarantor will not be allowed to control the letter of the contract, expressed without ambiguity. This position is put upon the ground that the contract of a guarantor, being a promise to pay the debt of another, is collateral and, under the Statute of Frauds, must be in writing; and, being in writing, plainly expressed, parol evidence will not be admitted to vary its terms. [Grant v. Naylor, 4 Cranch, 224; Allison v. Rutledge, 5 Yerg. (Tenn.) 193; McGovney v. State of Ohio, 20 Ohio, 93, 99.

But there is a rule of law, long recognized in this State, which, in our opinion, renders the Statute of Frauds inapplicable to the peculiar facts of this case. That rule is that though the contract is plainly in the name of one person as a party thereto, it may be shown by parol evidence that an undisclosed person is the real party; not as excusing the party whose name appears in the contract, for that would contradict the contract, but as merely adding another person to it. The most frequent illustration of this is with an agent and an undisclosed principal. The agent

cannot avoid the contract which he has made in his own name, but the other party may show there is an unnamed principal and add him to the obligation of the contract without violating the Statute of Frauds. [Higgins v. Senior, 8 Mees. & W. 834, 844; Higgins v. Dillinger, 22 Mo. 397, 400; Brigg v. Munchon, 56 Mo. 467 473; Kelly v. Thuey, 102 Mo. 522, 528.] In the first of these cases it is said that such parol evidence ''in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement, in pursuance of his authority, is in law the act of the principal.''

Now it seems that if it is not a violation of the Statute of Frauds to show by parol the real party is an unnamed principal, you can show the real party when the party named in the writing is fictitious; for by so doing you are only showing that he has bound himself by another name. While you may not, with propriety, call a fictitious name, standing alone, an entity, or a party, yet you may show by parol that it stands for the real person who used it. The only difference between that and an agent is in the fact that the agent has bound himself as his unnamed principal and the fictitious name has only bound the real party who made use of it; and it can but follow, under the authorities last cited, that the Statute of Frauds is not violated.

The contract was that plaintiff should be paid for the covers as they were received. The proof was that several thousands were delivered without collecting the price and it was never collected. To the extent of such deliveries defendant was discharged. In a sale for cash if time or credit be given it is a discharge of the guarantor. [Hunt v. Smith, 17 Wend. 179; 1 Brandt on Suretyship & Guaranty, sec. 377.] The delivery and payment of the price were contemporaneous acts. That the price should be collected was manifestly of high protective importance to the

guarantor and may have been the cause of his guaranty. As against this point plaintiff cites Mt. Calvary Church v. Albers, 174 Mo. 331, 342. We discover nothing in the case to aid plaintiff, rather to the contrary; for the court says that "the guarantor may be discharged by the creditor giving time to the debtor or by any change in the contract which varies the terms of the guaranty." A case of this character should not be confused with one where the party to whom the guaranty is addressed merely indulges the principal debtor, being under no obligation to collect. The judgment is reversed and the cause remanded. All concur.